**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LUTHER S. PATE, IV | * | |
|     Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | |
| GEFF YIELDING, ET AL. | * | NO: 4:09CV00371 SWW |
| | * | |
|     Defendants | * | |
| | * | |

**<u>ORDER</u>**

Luther S. Pate ("Pate"), a resident of Alabama, commenced this diversity action for breach of contract and fraud against Arkansas residents Geff Yielding ("Yielding"), Vespa Holdings, Inc. ("VHI"), and Vespa Beverages LLC ("VBL").[1] Pate also asserts a bailment claim against Vista Bottlers, Inc. ("Vista"), a Nebraska corporation. Now before the Court is Vista's motion to dismiss for lack of personal jurisdiction (docket entry #40), Pate's response in opposition (docket entry #81), and Vista's reply (docket entry #93). After careful consideration, and for the reasons that follow, Vista's motion to dismiss for lack of personal jurisdiction will be granted. Also pending are Pate's motion to file an amended complaint adding Bond Laboratories, Inc. as a defendant (docket entry #61), and a motion to intervene by Clifton H. Hoofman (docket entry #78).[2] Both motions are unopposed and will be granted.

---

[1] Pate also named "Vespa Beverages, Inc." as a defendant, alleging that "Vespa Beverages, Inc." is a fictitious name Yielding has used.

[2] A party seeking intervention of right under Rule 24(a)(2) must establish (1) it has a recognized interest in the subject matter of the litigation, (2) the interest might be impaired by the

**I.**

The complaint allegations can be summarized as follows. VBL, an Arkansas limited liability company, is wholly owned and controlled by VHI. Yielding is the CEO of VBL and a principal shareholder of VHI. In July 2006, VBL acquired the trademark for an energy drink known as "Killer Buzz." Yielding placed an order with Vista, a Nebraska corporation, to produce 40,300 cases of Killer Buzz.

In December 2008, Yielding met Pate and asked him to invest in VHI, stating that VHI needed additional capital to increase the distribution of Killer Buzz. Yielding provided Pate false information about VHI's financial status, and he failed to disclose that criminal charges were pending against him.[3]

Yielding and Pate ultimately agreed that Pate and other investors would lend VHI up to $1,500,000 and assist the corporation in obtaining a $2,000,000 Small Business Administration loan. In exchange, Yielding agreed that Pate and his investors would receive 55% of VHI's stock. In partial performance of the agreement, Pate made significant expenditures on behalf of VHI and wired Vista $190,780 as a down payment on VBL's order for 40,300 cases of Killer Buzz. Pate also spent time and money in efforts to market Killer Buzz nationally. Despite Pate's

---

disposition of the case, and (3) the interest will not be adequately protected by the existing parties. *See South Dakota ex rel Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Hoofman alleges that he is the owner of 1,000 shares of VHI common stock and therefore has an interest in the subject matter of this litigation that might be impaired by the disposition of the case. Pate disputes Hoofman's claim to VHI stock but agrees that he should be permitted to intervene. The Court finds that the requirements for intervention of right under Rule 24(a) are met and that Hoofman's motion to intervene should be granted.

[3]On April 30, 2009, a jury returned verdicts finding Yielding guilty of violating the federal Anti-Kickback Statute and falsifying documents. *See United States v. Yielding*, No. 4:08CR213 BSM (E.D. Ark).

performance, Yielding refused to transfer 55% of VHI to Pate and his group of investors.

Pate sues Yielding, VHI, and VBL for fraud and breach of contract, seeking damages and specific performance of the aforementioned agreement. Additionally, Pate brings a bailment claim against Vista, seeking to enjoin Vista from releasing or impairing Killer Buzz product in its possession or control, pending resolution of this lawsuit.

## II.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state. Once jurisdiction ha[s] been controverted or denied, [the plaintiff] ha[s] the burden of proving such facts.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 -1073 (8th Cir. 2004)(quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir.1974)). "'The plaintiff's " 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.'" *Id.*(quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 260 (8th Cir.1974)).

## III.

A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state. Arkansas' long-arm statute permits the assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting *Milliken*

*v. Meyer,* 311 U.S. 457, 463 (1940)).

The Supreme Court has held that in order to exercise personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228 (1958). Five factors should be considered when resolving a personal jurisdiction inquiry: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest in the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d. 519, 522-23 (8th Cir. 1996). The first three factors are closely related and are of primary importance, while the last two factors are secondary. *Id.* at 523.

Vista asserts that Pate has failed to allege any facts to show that Vista has had any contacts with Arkansas related to this cause of action.[4] After carefully reviewing the complaint allegations and evidence presented during the hearing on Pate's motion for a preliminary injunction, the Court agrees.

Pate alleges that VBL placed an order with Vista for approximately $380,000 worth of

---

[4]The Supreme Court has identified two types of personal jurisdiction: general and specific. General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868 (1984). Specific personal jurisdiction, in contrast, exists only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id*. at 414, 104 S.Ct. 1868. In this case, Pate proceeds under a theory of specific jurisdiction, as he does not allege that Vista has "continuous and systematic" contacts with Arkansas.

Killer Buzz. Along with the complaint, Pate filed a copy of an email message to Yielding from Vista, acknowledging VBL's order and listing the price per case "FOB Memphis, Tennessee." Docket entry #1, Ex. G. The message instructs Yielding to mail a down payment to Vista at an address in Omaha, Nebraska.

Pate further alleges that he paid Vista $190,780 toward VBL's production order. Along with the complaint, Pate submitted a memo dated April 7, 2009, signed by him, with instructions to wire $190,780 to Vista. Docket entry #1, Ex. G. Additionally, the Court has received evidence showing that Vista received a wire transfer for $190,780 from Pate's account with Sterne, Agee, and Leach, Inc. in Birmingham, Alabama. *See* May 26, 2009 Tr. (docket entry #49) at 124; Plf's Ex. #22-B.

Pate also alleges, in support of his bailment claim, that the Killer Buzz product on order with Vista "is currently in process or has been completed and the product is in possession of Hardy Beverage Company, a company hired by Vista to complete the production run." Docket entry #1, ¶ 59. During a hearing held on July, 17, 2009, testimony revealed that Hardy Bottling Company is located in Memphis, Tennessee.

Pate contends: "By entering into a contract with an Arkansas corporation to deliver product that would certainly be distributed into the State of Arkansas, Vista purposely availed itself of the privilege of conducting activities within this state, thus invoking the benefits and protections of Arkansas law."[5] Docket entry #81, at 4.

---

[5]In addition to allegations regarding VLB's production contract with Vista, Pate notes that Scott David Landow, the CEO of Vista's parent company, Bond Laboratories, Inc., testified to "substantial dealings by Bond Labs in the State of Arkansas." Docket entry #81, at 4. However, there is no evidence that would warrant disregarding the separate corporate entities of Bond Laboratories and Vista and there are no circumstances in this case that would permit the Court to

The Supreme Court has held that an individual's contract with an out-of-state party, standing alone, is insufficient to establish sufficient minimum contacts in the other party's home forum to support personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2184-85 (1985). Instead, the Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id.*(citing *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-317, 63 S.Ct. 602, 604-605 (1943)).

Vista's agreement to produce VBL's Killer Buzz product to be delivered to Memphis, Tennessee and acceptance of a wire transfer from Pate, a resident of Alabama, as down payment for VBL's order simply does not establish a contact, tie, or relation with Arkansas sufficient to support personal jurisdiction.[6] Although Vista must have foreseen that the Killer Buzz product it would produce for VBL would ultimately be delivered to Arkansas, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."

---

assert personal jurisdiction over Vista based solely on the activities of Bond Laboratories, Inc. *Cf. Anderson v. Dassault Aviation*, 361 F.3d 449 (8th Cir. 2004)(where parent company's contacts with forum state went well beyond mere ownership of a subsidiary residing in the forum state, the district court had personal jurisdiction over the parent company).

[6]Pate cites *Clune v. Alimak AB*, 233 F.3d 538 (8th Cir. 2000), for the proposition that Vista's production contract with VBL is sufficient to support personal jurisdiction. In *Clune*, a construction worker died in a fall from a construction hoist, and his survivors brought a wrongful death action in Missouri against the hoist manufacturer's Swedish successor. The Eighth Circuit concluded that the district court had personal jurisdiction over the defendant because the defendant delivered the product at issue into the stream of commerce with the expectation that it would be purchased by consumers in the forum state, *and* it created a distribution system that strategically brought the product into the forum state. The Court finds that this case has little in common with *Clune*.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566 (1980). More important is whether Vista's actual conduct and connection with Arkansas was such that it should have reasonably anticipated being haled to court in Arkansas, and the Court finds that the answer to this question is: no.

    IT IS THEREFORE ORDERED that Defendant Vista Bottlers, Inc.'s motion to dismiss for lack of personal jurisdiction (docket entry #40) is GRANTED.  Vista Bottlers, Inc. is dismissed as a party to this action and claims against this defendant are dismissed without prejudice.

    IT IS FURTHER ORDERED that Plaintiff's unopposed motion to file an amended complaint (docket entry #61) is GRANTED.  Plaintiff is directed to file the amended pleading within five days from the entry date of this order.

    IT IS FURTHER ORDERED that Clifton H. Hoofman's unopposed motion to intervene (docket entry #78) is GRANTED.  Hoofman is directed to file his complaint in intervention within five days from the entry date of this order.

    IT IS SO ORDERED THIS 17TH DAY OF JULY, 2009

                                            /s/Susan Webber Wright
                                            UNITED STATES DISTRICT JUDGE