**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 22 2010

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**SCHEDULE "A"**

IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| LUTHER S. PATE, IV | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09-CV00371 SWW |
| | ) | |
| GEFF YIELDING, | ) | |
| VESPA HOLDINGS, INC., | ) | |
| VESPA BEVERAGES, LLC | ) | |
| AND VESPA BEVERAGES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**CONSENT JUDGMENT AND STIPULATION**

Before the Court is the Amended Complaint of the Plaintiff, Stan Pate, and the

Counterclaim of the Defendant, Geff Yielding. Defendants, Vespa Holdings, Inc., ("VHI"),

Vespa Beverages, LLC ("VBL"), and Vespa Beverages, Inc. ("VBI") are nominal parties to this

lawsuit by virtue of the fact that control of those entities was at issue in this lawsuit. The Parties

have consented to this Consent Judgment and Stipulation, with Mr. Yielding entering into this

Consent Judgment and Stipulation on behalf of VHI and VBL. In consideration of same the

Court finds:

1.    Mr. Pate and Mr. Yielding have reached an agreement for the sale of the assets of

VBL and VHI to PBEV, LLC, an entity owned by Mr. Pate. The terms of that agreement are

memorialized in the Asset Purchase Agreement ("APA") which is attached hereto as Exhibit "A"

and incorporated in this Consent Judgment and Stipulation.

2.    Pursuant to the APA, and as additional consideration for entering into that

1

Agreement, the Parties have fully and finally compromised and settled any and all claims relating to this action and all other known or unknown disputes or claims existing as of the date of the APA.

It is, therefore, **CONSIDERED, ORDERED, ADJUDGED AND DECREED** by the Court that Plaintiff's Complaint and Amended Complaint and Defendant's Counterclaim are hereby dismissed with prejudice. All pending motions are deemed denied as moot.

**IT IS SO ORDERED.**

HON. SUSAN WEBBER WRIGHT
UNITED STATES DISTRICT JUDGE

Date: March 22, 2010

/s/ Edward T. Oglesby
Edward T. Oglesby (Ark. Bar No. 89158)
Oglesby Law Firm
100 Morgan Keegan Drive, Suite 100
Little Rock, AR 72202
Telephone: (501) 664-1000
Facsimile: (501) 664-1012
Email: Edward@oglesbylaw.com

And

/s/ Jess Askew III
Jess Askew III (Ark. Bar No. 86005)
Stephen A. Hester (Ark. Bar No. 2002031)
WILLIAMS & ANDERSON PLC
111 Center Street, Suite 2200
Little Rock, AR 72201
Telephone: (501) 372-0800
Facsimile: (501) 372-6453
Email: jaskew@williamsanderson.com
Email: shester@williamsanderson.com

*Attorneys for Luther S. Pate, IV*

/s/ Shelly Hogan Koehler
Shelly Hogan Koehler (Ark. Bar No. 2007275)
Perroni & Koehler
12511 Cantrell Road, Suite 100
Little Rock, AR 72223
Telephone: (501) 372-2070
Facsimile: (501) 823-2198
Email: shogan@perronilaw.com

*Attorneys for Geff Yielding*
*Vespa Holdings, Inc. and*
*Vespa Beverages, LLC*

# AGREEMENT

**THIS AGREEMENT** (the "Agreement") is made and entered into as of the _18th_ day of March, 2010 ("Effective Date"), by and among PBEV, LLC a Delaware Limited Liability Company ("**PBEV**" or "**Buyer**"), Vespa Holdings, Inc., an Arkansas corporation ("**VHI**"), Vespa Beverages, LLC, an Arkansas limited liability company ("**VBL**") and Geffrey A. Yielding, the controlling shareholder of VHI ("**Yielding**" and, collectively with VBL and VHI, herein the "**Seller**"), and Luther S. Pate IV ("**Pate**"). The Buyer, Pate and Seller, collectively, are referred to herein as the "**Parties**."

## WITNESSETH:

**WHEREAS**, VHI currently has a total of Eleven Thousand (11,000) shares of common stock issued and outstanding;

**WHEREAS**, Yielding is currently the owner of Ten Thousand (10,000) shares of common stock in VHI;

**WHEREAS**, Pate is currently the owner of One Thousand (1,000) shares of common stock in VHI, and he has agreed to assign the said shares of stock to PBEV to facilitate this transaction;

**WHEREAS**, VHI is the sole member and owner of a one hundred percent (100%) interest in VBL, which may sometimes operate under the asserted fictitious name of Vespa Beverages, Inc.;

**WHEREAS**, Pate and Yielding are involved in a lawsuit with respect to the ownership of VHI and VBL, the assets of VHI and VBL, and the production of the energy drink "Killer Buzz," pending in the United States District Court for the Eastern District of Arkansas, *Luther S. Pate IV v. Geff Yielding, et al.*, Case No. 4:09-CV-371SWW (the "Action");

**WHEREAS**, on May 28, 2009 at 9:30 a.m., the Court issued a Temporary Restraining Order in the Action, whereby Yielding and those acting in concert with him or on his behalf, were restrained from divesting shares, issuing any further shares, incurring any new indebtedness, or disposing of any other asset of VHI or VBL;

**WHEREAS**, on May 29, 2009 ("Removal Date"), the Court issued an Order in the Action, whereby Yielding was enjoined from taking action on behalf of VHI and VBL, and whereby Pate was authorized to direct the operations of VHI and VBL in order to preserve the business potential and assets of VHI and VBL;

**WHEREAS**, Pate has been directing the operations of VHI and VBL in accordance with the May 29, 2009 Court Order since the Removal Date;

**WHEREAS**, Seller desires to sell and Buyer desires to purchase certain assets of Seller on the terms and conditions herein set forth;

**WHEREAS**, as additional consideration for entering into this Agreement, the Parties desire to fully and finally compromise and settle any and all claims relating to the above-referenced Action and all other known or unknown disputes or claims existing as of the date hereof without resort to further litigation;

**WHEREAS**, as additional consideration for entering into this Agreement, the Parties agree that VHI and VBL on one hand, and Bond Laboratories, Inc. and certain of its affiliated individuals and entities on the other, shall receive releases whereby the said parties shall mutually release each other from any and all claims relating to certain transactions; and

**WHEREAS**, the Parties agree that the covenants, promises and agreements contained in this Agreement are conditional upon the entry of a Final Decree in the Action, the form of which final decree is attached hereto as **Schedule "A"**.

**NOW, THEREFORE,** in consideration of the mutual covenants, promises and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller, agreeing to be mutually bound by the terms and conditions herein, covenant and agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ASSETS

**1.1**    **Acquired Assets**.    Upon the terms set forth in this Agreement, and the performance by the Parties of their respective obligations hereunder, the Seller agrees to and does hereby sell, assign, transfer, and deliver to Buyer, and Buyer agrees to purchase from Seller, free and clear of all liens, liabilities, security interests and encumbrances of any nature whatsoever (except as otherwise specified in this Agreement as specifically assumed by the Buyer), all of the assets and other claims, rights and interests owned by Seller in connection with its manufacture and distribution of the Killer Buzz energy drink (the "Business").  This shall include, but not be limited to:

    (i)        All of the furniture, fixtures, and equipment listed on **Schedule "B"**, which is attached hereto and incorporated herein by reference;

    (ii)      The inventory, supplies and receivables;

    (iii)     All books, records, files and customer information and lists relating to the Business;

(iv)    All of Seller's right, title and interest in and to all intellectual and intangible property used in connection with the Business, including, but not limited to:

    A.  The Killer Buzz recipe and the Killer Buzz mixing instructions;

    B.  The federal trademark for the name Killer Buzz, which trademark bears United States Patent and Trademark Office Serial # 76627096;

    C.  All common law trademarks, including without limitation the "KB" in the form set forth on the side of the currently existing Killer Buzz cans, and all other trade names, trademarks and trade dress; and

    D.  All domain names and websites, including without limitation, KillerBuzz.com and KillerBuzz.net and all passwords, personal IDs, authorization codes, My Space, twitter and other social networking accounts, etc. with respect thereto;

    E.  The telephone numbers 1-866-644-BUZZ (2899) and 1-501-753-0369.

(v)    Seller's rights under and to any distribution contracts in effect as of the Effective Date;

(vi)    All of the Seller's vehicles described on **Schedule "C"** which is attached hereto and incorporated herein by reference; and

(vii)    Any and all other assets, rights, interests and attributes of the Seller necessary to continue the Business as a going concern without interruption.

All of the assets, property, rights and interests described and referred to in this Section 1.1 and being sold hereunder are collectively referred to hereinafter as the " Assets."

    **1.2**    **Excluded Assets.** Notwithstanding the provisions of Section 1.1, the Assets to be purchased by Buyer under this Agreement shall not include those assets currently in the possession of Yielding, nor any assets which were left at the former offices of the Seller located at 8010 Counts Massie Road, North Little Rock, Arkansas on November 13, 2009 when the offices were relocated to Tuscaloosa, Alabama.

    **1.3**    **No Assumed Liabilities.** Except for those liabilities, liens, mortgages, security interests, encumbrances and claims set forth on the **Schedule "D"**, which is attached hereto and incorporated herein by reference (the "Assumed Liabilities"), Buyer shall not assume any of the liabilities of Yielding, VHI or VBL and shall acquire the Assets free and clear of all liens, mortgages, security interests, encumbrances and claims. Other than the Assumed Liabilities, Seller represents and warrants that the Buyer shall not be or become liable for any claims,

demands, liabilities or obligations of any kind whatsoever arising out of or in any manner relating to the conduct of the Business by Yielding, VHI or VBL or the ownership or operation of the Assets on or prior to the Removal Date. Without limiting the foregoing, other than the Assumed Liabilities, the Buyer shall not assume or agree to perform, pay or discharge, and Yielding, VHI or VBL shall retain and remain unconditionally liable for all obligations, liabilities and commitments of Yielding, VHI and VBL, whether fixed or contingent, including but not limited to:

(i)     Severance, termination or other payments or benefits due to employees including accrued vacation pay;

(ii)    Workers' Compensation Claims for injuries or conditions arising on or prior to the Closing (regardless of when such claim is asserted);

(iii)   Liabilities for any federal, state, or local taxes of any nature owed by or asserted against VHI, VBL or Yielding except for such liabilities arising from the operation of the VBL after the Removal Date which liabilities are hereby assumed by the Buyer;

(iv)    Liabilities incurred in connection with violations of occupational safety, wage, health, welfare, and employee benefit laws or regulations;

(v)     Any liabilities of Yielding, VHI or VBL to third parties or other persons arising out of the failure of Yielding, VHI or VBL to obtain any necessary consents or approvals of the sale of the Assets to the Buyer (including damages asserted by third parties for breach due to the failure to obtain such consents or approvals);

(vi)    Any undisclosed or contingent liabilities of Yielding, VHI or VBL;

(vii)   Other than liabilities assumed pursuant to the distribution contracts and the indebtedness owed on any vehicles, any liabilities related to borrowed funds or to creditors (including without limitation contractors and trade creditors) of Yielding, VHI and VBL;

(viii)  Other than liabilities assumed pursuant the terms of this Agreement, any liabilities related to the conduct of the Business or operation or servicing of the Assets for any period prior to the Closing; and

(ix)    Any other liabilities of any kind or nature whether now in existence or hereafter arising.

**1.4     Purchase Price**. As consideration for the purchase of the Assets, Buyer shall deliver and tender to Seller the following, as applicable:

4

(i)    The right, title and interest in and to the One Thousand (1,000) shares of VHI stock owned by Buyer.

(ii)   The assumption of indebtedness owed by Seller to Pate.

(iii)  The assumption of an attorney's fees claim and litigation expenses that Pate asserts against Seller.

(iv)   The assumption of reasonable compensation owed by VHI and VBL to Pate for services rendered from the Removal Date through Closing in managing the day-to-day operation of the Business pursuant to the May 29, 2009 Court Order in the Action.

(v)    A release and discharge of VHI and VBL from claims of Bond Laboratories, Inc.

(vi)   The assumption of the indebtedness owed by Seller to Bond Laboratories, Inc. in excess of $175,000 assigned by Bond Laboratories, Inc. to Pate in the Settlement Agreement dated November 3, 2009.

(vii)  The assumption of the indebtedness owed by VHI and VBL owed to Pearce, Bevill, Leesburg and Moore, PC.

(viii) The assumption of VBL's lawfully incurred operating expenses from the removal date to the closing date.

(ix)   The assumption of the VBL's payroll tax liability from the removal date to the closing date.

(x)    A cash payment in an amount equal to One Hundred Sixty Thousand Dollars and 00/100 ($160,000.00).

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER.

In order to induce Buyer to enter into this Agreement, Seller hereby makes the following representations and warranties to Buyer:

**2.1**  **Organization of the VHI**.  VHI is a corporation duly organized, validly existing, and in good standing under the laws of the State of Arkansas.

**2.2**  **Organization of VBL**.  VBL is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Arkansas.

**2.3**  **Authorization of Transaction**.  Upon entry of a Final Decree in the Action,

Seller represents and warrants that it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of the Seller, enforceable in accordance with its terms and conditions.

**2.4    No Conflict**. The execution and delivery of this Agreement will not, directly or indirectly (with or without notice or lapse of time): (i) contravene, conflict with, or result in a violation of (A) any provision of the organizational documents of VHI and VBL, or (B) any resolution adopted by the board of directors, members, managers or the shareholders of VHI and VBL, as applicable; (ii) contravene, conflict with, or result in a violation of, any agreements to which Seller, individually or collectively, is a party; (iii) give any person or entity the right to challenge the transactions contemplated by this Agreement or to exercise any remedy or obtain any relief under any laws to which the Assets or Business may be subject; (iv) cause Buyer to become subject to, or to become liable for, the payment of any tax except as expressly assumed in this Agreement; or (v) result in the imposition or creation of any lien upon or with respect to any of the Assets or the Business.

Seller is not required to give any notice to or obtain any consent from any person or entity by reason of the execution and delivery of this Agreement or the consummation or performance of any transaction contemplated by this Agreement.

**2.5    Title**. Upon Closing, Seller represents and warrants that it has good and marketable title to all of the Assets free and clear of all liens, liabilities, security interests, leasehold interests and encumbrances of any nature whatsoever ( except as expressly stated and assumed by the Buyer in this Agreement), and can transfer the Assets without the prior approval of any third party.

**2.6    Good Working Order**. All inventory, fixtures, furniture and furnishings, appliances and equipment now owned, operated and being used by Seller in the conduct of the Business, are in good working order and condition.

**2.7    Taxes**. Seller has paid or will pay all income, self-employment, Social Security, withholding, unemployment insurance and sales taxes which are due and owing but unpaid to any applicable city, state and federal government to date, if any, which could affect the Assets or the Business and, further, Seller shall pay all taxes incurred by it in connection with this Agreement.

**2.8    Brokers' Fees**. Seller has no liability to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement.

**2.9    Undisclosed Liabilities**. Seller has disclosed all liabilities and obligations in this Agreement, and there are no undisclosed liabilities or obligations of the Seller.

**2.10    Legal Compliance**. Prior to the Removal Date, Yielding never operated and managed VHI and VBL in a manner that resulted in the violation of any law, rule or regulation of any applicable city, state or federal governmental or regulatory authority, which could subject

6

the Buyer to liability as the successor owner of the Assets and Business, or could put at risk the Buyer's ownership and possession of the Assets and the Business.

**2.11**  **Compliance with Agreements**.  At all times prior to the Removal Date, Seller was in compliance with all laws, rules, regulations, covenants and warranties connected with any agreement to which Seller is or was a party.

**2.12**  **Liens or Litigation**.  There are no existing or threatened tax or judgment liens which will continue to, or may in the future, affect the Assets or the Buyer's operation of the Business upon the completion of the transactions described in this Agreement.  Except for the Action, Seller is not (i) subject to any outstanding injunction, judgment, order, decree, ruling, or charge, or (ii) a party or threatened to be made a party to any legal proceeding.

**2.13**  **Yielding Actions**.  Yielding hereby represents and warrants that he has not performed any act on behalf of or in connection with VHI or VBL since the Removal Date, nor has he taken any action with regard to the Assets or Business.

**2.14**  **Employment Agreements**.  There is no agreement or contract, whether written or oral, entered into by Seller prior to the Removal Date between the Seller and any employee, officer, consultant, agent or other person pertaining to the Business which cannot be terminated upon 30 days' written notice without liability.

**2.15**  **Termination of Employees**.  All employees of VHI and VBL shall be terminated effective as of the Closing Date as defined in Article VIII.

**2.16**  **Certain Payments**.  Prior to the Removal Date, neither Seller, nor any director, manager, member, shareholder, officer, agent, or employee of Seller, or any other person or entity associated with or acting for or on behalf of Seller, had directly or indirectly established or maintained any fund or asset that has not been recorded in the books and records of the Seller.

**2.17**  **No Reliance**.  Seller is not relying on any oral representation or warranty of Buyer or any other person or entity, and is relying only on the written representations and warranties of Buyer set out herein.

**2.18**  **Disclosure**.  The representations and warranties contained in this Article II do not contain any untrue statement of a material fact or omit to state any material fact necessary in order to prevent the statements and information contained in this Article II from being misleading.

**2.19**  **Continuing Effect**.  The representations and warranties of Seller set out in this Article II shall continue to be true at all times through and including the Closing Date, except to the extent that Seller specifically notifies Buyer in writing to the contrary prior thereto.

**2.20**  **Operation of Business**.  Seller represents and warrants that there is no claim or

demand that can be made, nor is any claim or demand threatened, by any third party, relating to actions of the Seller, or any director, manager, member, shareholder, officer, agent, or employee of Seller, or any other person or entity associated with or acting for or on behalf of Seller, which could effect the Buyer's ability to purchase the Assets free and clear of any claims and to freely operate the Business upon the completion of the transactions provided for in this Agreement.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BUYER.

In order to induce Seller to enter into this Agreement, Buyer hereby makes the following representations and warranties to Seller:

**3.1** **Organization of the PBEV**. PBEV is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware.

**3.2** **Authorization of Transaction**. Buyer has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder. This Agreement constitutes the valid and legally binding obligation of the Buyer, enforceable in accordance with its terms and conditions.

**3.3** **No Conflict**. To the knowledge of Buyer, neither the execution and delivery of this Agreement nor the consummation or performance of the transactions contemplated by this Agreement will, directly or indirectly (with or without notice or lapse of time) contravene, conflict with, or result in a violation of, or give any person or entity the right to challenge any of the transactions contemplated by this Agreement or to exercise any remedy or obtain any relief under any laws to which Buyer may be subject.

**3.4** **Brokers' Fees**. The Buyer has no liability to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated by this Agreement.

**3.5** **Hiring of Employees**. Buyer shall consider offering "at will" employment to Seller's employees.

**3.6** **No Reliance**. Buyer is not relying on any oral representation or warranty of Seller or any other person or entity, and is relying only on the agreements and written representations and warranties of Seller set out herein.

**3.7** **Continuing Effect**. The representations and warranties of Buyer set out in this Article III shall continue to be true at all times through and including Closing, except to the extent that Buyer specifically notifies Seller in writing to the contrary prior thereto.

## ARTICLE IV
## CONDITIONS PRECEDENT

**4.1    Conditions Precedent to Buyer's Obligations.**  The obligations of Buyer under this Agreement shall be subject to the fulfillment of the following conditions precedent; provided, however, that Buyer may conditionally or unconditionally waive any one or more of the conditions:

(i)      Representations and Warranties.  Each of the representations and warranties of Seller contained in this Agreement shall be true as of the Closing Date.

(ii)     Covenants.  Seller shall have complied with, fulfilled and performed each of the covenants, terms and conditions to be complied with, fulfilled or performed by Seller under this Agreement on or prior to the Closing Date.

(iii)    Litigation.  No order, decree or ruling of any governmental authority or court shall have been entered and no governmental or other action, suit, claim, investigation or proceeding shall be pending or threatened challenging: (a) the ownership of Seller or Business, or (b) the legality or validity of the transactions contemplated hereby.

(iv)    Required Consents and Approvals.  Buyer shall have received delivery, upon terms and conditions reasonably satisfactory to it, of all of the Seller's required consents and approvals.

(v)     No Adverse Change.  There shall have been no material adverse change in the condition (financial, physical or otherwise) of the operations, business, licenses or prospects of VHI, VBL or the Business.

(vi)    Termination of Employment and Business. Effective as of the Closing Date, VHI and VBL shall have terminated all of their respective employees engaged in work related to the Assets or Business, and the Seller shall cease to conduct the Business. After the Closing Date, Pate shall be and is hereby authorized to have the state and federal income tax returns prepared for VHI and VBL for the years 2009 and 2010, and Pate shall be and is hereby authorized to sign the same on the behalf of the said companies and file them with the IRS and such states in which the filing of returns are necessary. Pate shall be and is authorized to file such tax returns as may be necessary concerning employee wages and any other necessary jurisdiction returns or reports since the Removal Date.   Pate and Yielding specifically elect and consent to an alternative method of allocation for the VHI tax items pursuant to Section 1377 of the Internal Revenue Code and the regulations promulgated thereunder for the 2010 tax year.

(vii)   Lien Searches.  The Buyer shall have received lien searches from such recording offices as Buyer shall deem necessary in its sole discretion, and such lien searches shall not evidence any liens on the Assets.

(viii)    **Non-Competition Agreement.** At the Closing, Yielding shall have executed a Non-Competition and Confidentiality Agreement in the form attached as **Schedule "E"**.

(ix)    **Sales Tax Clearance Letter.** Buyer shall have received a Sales Tax Clearance letter with respect to VHI and VBL from the Arkansas Department of Finance & Administration.

(x)    **Final Decree.** The receipt of a file-marked Final Decree in connection with the Action.

(xi)    **Closing Deliveries.** Buyer shall have received from Seller all of the instruments, documents and considerations described herein and the form and substance of all such materials shall be satisfactory in all reasonable respects to Buyer and Buyer's counsel.

**4.2    Conditions Precedent to Seller's Obligations.** The obligations of Seller under this Agreement shall be subject to the fulfillment of the following conditions precedent; provided, however, that Seller may conditionally or unconditionally waive any one or more of the conditions:

(i)    **Representations and Warranties.** Each of the representations and warranties of Buyer contained in this Agreement shall be true as of the Closing Date.

(ii)    **Covenants.** Buyer shall have complied with, fulfilled and performed each of the covenants, terms and conditions to be complied with, fulfilled or performed by Buyer under this Agreement on or prior to the Closing.

(iii)    **Litigation.** No order, decree or ruling of any governmental authority or court shall have been entered and no governmental or other third-party action, suit, claim, investigation or proceeding shall be pending or, to the knowledge of Buyer, threatened challenging the legality and validity of the transactions contemplated hereby.

(iv)    **Required Consents and Approvals.** Seller shall have received delivery, upon terms and conditions satisfactory to it, of all of the Buyer's required consents and approvals.

(v)    **Final Decree.** The receipt of a file-marked Final Decree in connection with the Action.

(vi)    **Closing Deliveries.** Seller shall have received from Buyer all of the instruments, documents and considerations described herein, and the form and substance of all such materials shall be satisfactory in all reasonable respects to Seller and its

10

counsel.

## ARTICLE V
## TERMINATION OF AGREEMENT

**5.1 Manner of Termination.** This Agreement and the transactions contemplated hereby may be terminated at any time prior to the Closing as provided below:

(i)     By the mutual consent of the Parties hereto;

(ii)    By Buyer, if there has been a material misrepresentation, a material breach of warranty or a failure to comply with any material covenant on the part of Seller, and such misrepresentation, breach or failure to perform has not been cured within ten (10) days of the date notice of such misrepresentation, breach or failure to perform is delivered by Buyer to Seller; or

(iii)   By Seller, if there has been a material misrepresentation, a material breach of warranty or a failure to comply with any material covenant on the part of Buyer, and such misrepresentation, breach or failure to perform has not been cured within ten (10) days of the date notice of such misrepresentation, breach or failure to perform is delivered by Seller to Buyer.

**5.2     Effect of Termination.** Upon termination as provided in Section 5.1 (ii) or (iii), the terminating party may pursue any and all remedies available to it at law or in equity. Upon termination as provided in Article 5.1(i) this Agreement shall be void and of no further force or effect, and there shall be no further obligation on the part of Buyer or Seller or their respective officers, directors, employees, agents, or shareholders.

## ARTICLE VI
## INDEMNIFICATION

**6.1     Seller's Indemnity.** Subject to Section 6.3 hereof, Seller agrees to indemnify and defend Buyer against, and in respect of, any and all third-party claims, demands, losses, damages and expenses, including, but not limited to, reasonable attorneys' fees (collectively, "Losses"), which Buyer shall incur or suffer, which arise, result from, or relate to any default, breach or violation of, or inaccuracy in, or failure by the Seller to perform any of its representations, warranties, or agreements in this Agreement or in any other instrument furnished or to be furnished under this Agreement.

**6.2     Buyer's Indemnity.** Subject to Section 6.3 hereof, Buyer hereby agrees to indemnify and defend Seller against, and in respect of, any and all third-party claims, demands, losses, damages and expenses, including, but not limited to, reasonable attorney's fees (collectively, "Losses"), which the Seller shall incur or suffer, which arise, result from, or relate to any default, breach or violation of, or inaccuracy in or failure by Buyer to perform any of its

representations, warranties, or agreements in this Agreement or in any other instrument furnished or to be furnished under this Agreement.

**6.3** **Limitations**. No Party shall be liable for any claim for indemnification hereunder unless written notice of a claim for indemnification is delivered by the Party seeking indemnification to the Party from whom indemnification is sought with respect to any such breach before the survival date specified in Section 9.1 hereof. All notices shall set forth with reasonable specificity the basis for such claim for indemnification. Notwithstanding anything in this Agreement to the contrary, neither Party shall assert any claim against the other for indemnification hereunder with respect to any breach of such warranties or representations unless and until the amount of such claim or claims shall exceed Five Thousand Dollars ($5,000) calculated on a cumulative basis, and then only in respect to the excess over said cumulative amount.

**6.4** **Defense of Third Party Claims**. The obligations of the Seller and Buyer with respect to their respective indemnities hereunder resulting from any claim or other assertion of liability by third parties (hereinafter collectively, "Third Party Claim(s)"), shall be subject to the following terms and conditions:

(i)     The Party seeking indemnification (the "Indemnified Party") shall give written notice of any such Third Party Claim to the Party from whom indemnification is sought (the "Indemnifying Party") within a reasonable time after the Indemnified Party receives notice thereof; provided, however, the failure to give notice timely shall not affect the Indemnifying Party's obligation hereunder except to the extent that such failure prejudices the Indemnifying Party or its ability to defend such Third Party Claims.

(ii)    The Indemnifying Party shall have the right to undertake, at its own expense, with counsel or other representatives of its own choosing and reasonably acceptable to the Indemnified Party, the defense or settlement of any such Third Party Claim.

(iii)   In the event that the Indemnifying Party shall have the right to undertake the defense of any Third Party Claim, but shall fail to notify the Indemnified Party within ten (10) Business Days of receipt of the notice that it has elected to undertake such defense or settlement, or if at any time the Indemnifying Party shall otherwise fail to diligently defend or pursue settlement of such claim, then the Indemnified Party shall have the right to undertake, at the Indemnifying Party's expense, the defense, compromise, or settlement of such claim, subject to Section 6.4(iv), with counsel reasonably acceptable to the Indemnifying Party.

(iv)    Neither Party shall settle any Third Party Claim without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. In the event the Indemnifying Party submits to the Indemnified Party a bona fide settlement offer from the third party claimant of any Third Party Claim (which

settlement offer shall include as an unconditional term thereof the giving by the claimant or the plaintiff to the Indemnified Party of a release from all liability in respect of such claim), and the Indemnified Party refuses to consent to such settlement, then thereafter the Indemnifying Party's liability to the Indemnified Party for indemnification hereunder with respect to such Third Party Claim shall not exceed the settlement amount included in said bona fide settlement offer, and the Indemnified Party shall either assume the defense of such Third Party Claim or pay the Indemnified Party's attorney fees and other out-of-pocket costs incurred thereafter in continuing the defense of such claim.

(v)     Regardless of which Party is conducting the defense of any such Third Party Claim, the other Party, with counsel or other representatives of its own choosing and at its sole cost and expense, shall have the right to consult with the Party conducting the defense of such claim and its counsel or other representatives concerning such claim, and the Indemnifying Party and the Indemnified Party and their respective counsel or other representatives shall cooperate with respect to such claim, and the Party conducting the defense of any such claim and its counsel shall in any case keep the other Party and its counsel (if any) fully informed as to the status of any claim and any matters relating thereto. Each Party shall provide to the other Party such records, books, documents and other materials as shall reasonably be necessary for such Party to conduct or evaluate the defense of any Third Party Claim and will generally cooperate with respect to any matters relating thereto.

(vi)    Any amount of an Indemnified Party's indemnification costs that become due with respect to Third Party Claims, whether or not through settlement or adjudication, including periodic costs to defend any claim or demand, shall be paid promptly by the Indemnifying Party within thirty (30) days after written demand therefore.

## ARTICLE VII
## RELEASES

**7.1    Release of Claims by Buyer.** As additional consideration to the Seller for entering into this Agreement, Buyer and Pate and their respective heirs, successors and assigns, hereby agree and acknowledge that by Buyer entering into this Agreement and accepting the good and valuable consideration provided for in this Agreement, to which Buyer is not otherwise entitled, and upon Seller satisfying all requirements set forth in this Agreement, Buyer knowingly, voluntarily, irrevocably and unconditionally releases and forever discharges Yielding, individually, and VHI and VBL and their parent, affiliates, divisions, subsidiaries and other related entities, and his and their respective officers, shareholders, managers, members, directors, employees, agents, successors, assigns, estate, and heirs ("Seller Releasees"), of any and all claims, complaints, charges, allegations, demands or causes of action of any kind whatsoever, whether in law or in equity, direct or indirect, known or unknown, in tort, contract,

13

by statute or any other basis for relief, compensatory, punitive or other damages, expenses (including attorney's fees), reimbursements or costs of any kind, which the Buyer ever had, now has, or hereafter can, shall or may have or assert against Seller Releasees for any matter, cause or thing relating to the Business or the Assets, which may have occurred before the Effective Date of this Agreement.

7.2 **Release of Claims by Seller.** As additional consideration to the Buyer for entering into this Agreement, Yielding, individually, VHI and VBI and their parents, affiliates, divisions, subsidiaries and other related entities, and his and their respective officers, shareholders, managers, members, directors, employees, agents, successors, assigns, estate, and heirs ("Seller Releasors"), hereby agree and acknowledge that by Seller entering into this Agreement and accepting the good and valuable consideration provided for in this Agreement, to which Seller is not otherwise entitled, and upon closing, Seller Releasors knowingly, voluntarily, irrevocably and unconditionally release and forever discharge Buyer and Pate and their respective heirs, successors and assigns ("Buyer Releasees"), of any and all claims, complaints, charges, allegations, demands or causes of action of any kind whatsoever, whether in law or in equity, direct or indirect, known or unknown, in tort, contract, by statute or any other basis for relief, compensatory, punitive or other damages, expenses (including attorney's fees), reimbursements or costs of any kind, which Seller Releasors ever had, now have, or hereafter can, shall or may have or assert against the Buyer Releasees, or any one of them, for any matter, cause or thing relating to the Business or Assets, which may have occurred before the Effective Date of this Agreement.

7.3 **Bond Release.** As additional consideration for entering into this Agreement, Yielding hereby agrees to execute a Release, the form of which is attached hereto as **Schedule "F"**, and which is incorporated herein by reference, whereby VHI and VBL will release Bond Laboratories, Inc. and certain other affiliated individuals and entities from any and all claims relating to transactions that were the subject of certain court proceedings in Arkansas and California.

7.4 **Limitation.** The Parties hereby acknowledge and agree the releases described in this Article VII shall not apply to any default, breach or violation of, or inaccuracy in, or failure by a Party to perform any of its representations, warranties, or agreements in this Agreement or in any other instrument furnished or to be furnished under this Agreement.

## ARTICLE VIII
## CLOSING

8.1 **Closing Date, Etc.** The transactions contemplated hereby shall be consummated at a closing (the "Closing") to be held at the offices of Williams & Anderson, PLC, Suite 2200, 111 Center Street, Little Rock, Arkansas at 10:00 a.m., on March 8, 2010, or at such other place and time as the Parties hereto may jointly designate (the "Closing Date"). Legal title, equitable title and risk of loss with respect to the property and rights transferred hereunder shall pass at 12:01 a.m. on the Closing Date.

**8.2** **Deliveries at Closing**.

(i)     Deliveries by Buyer. At the Closing, Buyer shall deliver or cause to be delivered to Seller the following:

      (a)     Resolutions. A Resolution executed by the members of PBEV approving the transactions to be carried out pursuant to this Agreement, attached as **Schedule "G"**;

      (b)     Purchase Price. The Purchase Price in immediately available funds by wire transfer;

      (c)     Bring Down Certificate. A certificate dated the Closing Date and executed by Buyer to the effect that each of the representations and warranties of Buyer contained in this Agreement or in any written statement or certificate relating thereto delivered to Seller is true and correct in all material respects on and as of such date, attached as **Schedule "H"**;

      (d)     Stock Power. An executed Irrevocable Stock Power assigning ownership of Pate's One Thousand (1,000) shares of VHI to PBEV, then an executed Irrevocable Stock Power assigning the said One Thousand (1,000) shares from PBEV to Yielding;

      (e)     Bond Release. A Release executed by Bond Laboratories, Inc. and other affiliated individuals and entities (collectively, the "Bond Entities"), whereby the Bond Entities release and discharge VBL and VHI from all claims attached as **Schedule "I"**; and

      (f)     Other. Such other documents and instruments as Seller may reasonably request.

(ii)    Deliveries by Seller. At the Closing, Seller shall deliver to Buyer the following:

      (a)     Resolutions. A Resolution executed by the shareholders of VHI approving the transactions to be carried out pursuant to this Agreement, and a Resolution executed by the sole member of VBL approving the transactions to be carried out pursuant to this Agreement. Attached as **Schedule "J"**.

      (b)     Bring Down Certificates. A certificate dated the Closing Date executed by Yielding, VHI and VBL to the effect that each of the representations and warranties of Seller contained in this Agreement or in any written

statement or certificate delivered to Buyer at Closing are true, accurate and complete in all material respects on and as of the Closing Date. Attached as **Schedule "K"** and **"L"**.

(c)     <u>Non-Competition and Non-Disclosure Agreement</u>. An executed copy of the Non-Competition and Non-Disclosure Agreement attached as Schedule E.

(d)     <u>Bills of Sale</u>. The following Bills of Sale executed by Yielding, VHI and VBL:

           (i)     Bill of Sale and Assignment of Federal Trademark in the form attached hereto as **Schedule "M"**.

           (ii)     Bill of Sale and Assignment of Goodwill and All Intangible Property in the form attached hereto as **Schedule "N"**.

           (iii)     Bill of Sale and Assignment of Trade Secrets in the form attached hereto as **Schedule "O"**.

           (iv)     Bill of Sale and Assignment of Domain Names and Web Addresses in the form attached hereto as **Schedule "P"**.

           (v)     Bill of Sale and Assignment for furniture, fixtures, equipment, inventory and supplies in the form attached hereto as **Schedule "B"**.

           (vi)     Bill of Sale in the form attached hereto as **Schedule "C"**. for the vehicles identified on **Schedule "C"** attached hereto and an Irrevocable Power of Attorney authorizing Buyer to execute transfer of Certificates of Titles on the said vehicles.

(e)     <u>Assignment of Contracts</u>. An executed copy of an Assignment of Contracts, the form of which is attached hereto as **Schedule "Q"**.

(f)     <u>Bond Release</u>. A Release executed by VHI and VBL in favor of the Bond Entities, the form of which is attached hereto as **Schedule "I"**.

(g)     <u>Sales Tax Clearance Letters</u>. Sales Tax Clearance Letters with respect to VHI and VBL from the Arkansas Department of Finance & Administration.

(h)     <u>Other</u>. Such other documents and instruments as Buyer may reasonably

request.

     (i)     The Killer Buzz recipes and mixing instructions.

**ARTICLE IX**
**MISCELLANEOUS**

**9.1**    <u>Survival of Representations and Warranties</u>.   The representations and warranties contained in this Agreement and all other terms and conditions shall survive for a period of three (3) years following the Closing Date.

**9.2**    <u>Entire Agreement</u>.  This Agreement, including the documents attached hereto or referred to herein, contains the entire understanding and agreement of the Parties with respect to the subject matter hereof and shall not be amended or terminated except by written instrument duly executed by the Parties.  Any and all previous agreements or understandings between the Parties regarding the subject matter hereof are superseded in their entirety by this Agreement.

**9.3**    <u>Assignability; Binding Effect; No Third-Party Beneficiaries</u>.  This Agreement shall not be assignable by any of the Parties except with the written consent of all the other Parties.  This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, heirs, and permitted assigns.  No parties other than Buyer, Pate and Seller shall have any rights by virtue of this Agreement.  Notwithstanding the foregoing, Buyer is permitted to assign its rights by virtue of this Agreement to any entity in which it or Pate have an ownership interest.

**9.4**    <u>Notices</u>.  All notices, requests, demands, waivers, consents, approvals, or other communications which are required under or permitted hereunder shall be in writing and delivered personally or by registered or certified mail, postage prepaid, as follows:

If to Buyer:             PBEV, LLC
                                 c/o W. Cameron Parsons
                                 The Parsons Firm, P.C.
                                 2201 Jack Warner Parkway, Suite 2
                                 Tuscaloosa, AL 35401

with a copy to:      Jess Askew III
                                   Williams & Anderson PLC
                                   111 Center Street, Suite 2200
                                 Little Rock, AR 72201

If to Seller:       PETRONI & KOEHLER
                                 12511 CANTRELL RD. SUITE 100
                                 LITTLE ROCK, AR 72223

or at such other address as the party entitled to receive such notice may, from time to time, specify in a writing which conforms with the requirements of this paragraph.

**9.5    Arkansas Law to Govern**.  This Agreement shall be interpreted in accordance with the laws of the State of Arkansas.

**9.6    Article Headings**.  All section headings herein have been inserted for convenience of reference only and shall in no way modify or restrict any of the terms or provisions hereof.

**9.7    Modification; Waivers**.  This Agreement may not be amended or modified, nor may compliance with any condition or covenant set forth herein be waived, except by a writing duly and validly executed by the Parties or, in the case of a waiver, the Party waiving compliance.  No delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any waiver on the part of any Party of any such right, power or privilege, or any single or partial exercise of any such right, power or privilege, preclude any further exercise thereof or the exercise of any other such right, power or privilege.

**9.8    Schedules**.  All Schedules attached hereto or referred to in this Agreement are intended to be and are hereby specifically incorporated herein by reference.

**9.9    Further Actions and Assurances**.  Each of the Parties shall execute and deliver such additional documents and shall cause such further and additional action to be taken, either before or after Closing, which either of the Parties may reasonably require in order to effectuate the terms of this Agreement. Upon the incarceration of Yielding, Yielding hereby grants to Pate his power of attorney to execute such documents as may be reasonably necessary to satisfy the obligations of the Seller under this Agreement, including, but not limited to, tax returns for the VHI and VBL and documents related to the transfer of title of the vehicles.

**9.10    Authority**.  Each of the undersigned personally warrants and represents his individual authority to sign this Agreement on behalf of the party for which it is signed.

**9.11    Cooperation**.  Seller shall cooperate with Buyer and its representatives to obtain all governmental approvals necessary or appropriate in connection with the acquisition and operation of the Assets and Business and do such other acts and things in good faith as may be reasonable, necessary or appropriate in order to timely effectuate the intents and purposes of this Agreement and the consummation of the transactions contemplated hereby.

**9.12    Severability**.  In the event that any provision or any portion of any provision of this Agreement shall be held to be void or unenforceable, then the remaining provisions of the Agreement (and the remaining portion of any provisions held to be void or unenforceable in part only) shall continue in full force and effect.

**9.13** **Arbitration**. Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof. The arbitration proceedings shall be conducted in the metropolitan area of Birmingham, Alabama. The Buyer, Pate and the Seller shall select an arbitrator from a list provided by the American Arbitration Association that is mutually satisfactory to them. If the Buyer, Pate and the Seller are unable to agree on an arbitrator, the Seller, Pate and the Buyer shall each choose an arbitrator from the list provided by the American Arbitration Association. The two arbitrators so selected shall then agree upon a third arbitrator who shall be the single arbitrator to hear the dispute and decide it. The award of the arbitrator shall be binding and final on all Parties. Any and all legal, accounting and other costs and expenses incurred by the prevailing party shall be borne by the non-prevailing party.

**9.14** **Recitals.** All recitals set forth in this Agreement are contractual and are not merely recitals of fact.

**9.15** **Counterparts; Facsimile**. This Agreement and any amendments hereto may be executed in one or more counterparts, by facsimile signature or otherwise, each of which shall be deemed to be an original by the Parties executing such counterpart, but all of which shall be considered one and the same instrument.

**9.16** **Construction**. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. The word "including" shall mean including without limitation, and the word "include" shall mean include without limitation. The Parties intend that each representation, warranty, and covenant contained herein shall have independent significance. If any Party has breached any representation, warranty, or covenant contained herein in any respect, the fact that there exists another representation, warranty, or covenant relating to the same subject matter (regardless of the relative levels of specificity) which the Party has not breached shall not detract from or mitigate the fact that the party is in breach of the first representation, warranty, or covenant.

**9.17** **Joint and Several Liability**. The liability of VHI, VBL and Yielding with respect to the Representations and Warranties set forth in Section 1.3 and Article II shall be joint and several.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed and delivered on the day and year first above written.

**BUYER:**                                    **SELLER:**

**PBEV, LLC**

Luther S. Pate, IV
Its: Manager

**VESPA HOLDINGS, INC.**

By: Geffrey Yielding
Its: President

**VESPA BEVERAGES, LLC**

By: **Vespa Holdings, Inc.**
Its: **Sole Member**

By: _Geffrey Yielding President_
       Geffrey Yielding
Its:    President

_Geffrey Yielding, Individually_

_____
Luther S. Pate IV, Individually

**VESPA BEVERAGES, LLC**

By: Vespa Holdings, Inc.
Its: Sole Member


By: _____
       Geffrey Yielding
Its:    President



_____
Geffrey Yielding, Individually



_____
Luther S. Pate IV, Individually

## SCHEDULE "B"

## BILL OF SALE AND ASSIGNMENT

This **BILL OF SALE AND ASSIGNMENT** (the *"Assignment"*), is made as of March 18, 2010, from Vespa Holdings, Inc., an Arkansas corporation (*"VHI"*), Vespa Beverages, LLC, an Arkansas limited liability company (*"VBL"*) and Geffrey A. Yielding, (collectively, the *"Sellers"*), to PBEV, LLC, a Delaware limited liability Company (*"Buyer"*).

### WITNESSETH:

**WHEREAS**, VHI currently has a total of Eleven Thousand (11,000) shares of common stock issued and outstanding;

**WHEREAS**, Yielding is currently the owner of Ten Thousand (10,000) shares of common stock in VHI;

**WHEREAS**, VHI is the sole member and owner of a one hundred percent (100%) interest in VBL, which may sometimes operate under the asserted fictitious name of Vespa Beverages, Inc.;

**WHEREAS**, Seller has been engaged in the business (*"Business"*) of manufacturing and distributing liquid beverages, specifically including, but not limited to, the manufacture and distribution of the Killer Buzz energy drink;

**WHEREAS**, Company has agreed to purchase and Seller has agreed to sell, substantially all of the assets used in the Business (the *"Assets"*) pursuant to an Asset Purchase Agreement executed of even date herewith (the *"Asset Purchase Agreement"*);

**WHEREAS**, it is the purpose of Seller hereunder to sell and transfer the property described in the Agreement to the Buyers; and

**WHERAS,** unless the context clearly indicates otherwise, capitalized terms used herein and in Exhibit A shall have the meanings set forth in the Agreement.

**THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers do hereby grant, bargain, sell, assign, convey, transfer and deliver to Buyers all right, title and interest to the following assets described on Exhibit "A" hereto (*"Acquired Assets"*).

**TO HAVE AND TO HOLD** the same unto Buyer and its successors and assigns, for its own use, benefit and behalf forever.

Sellers covenant to and with Buyer and its successors and assigns that they are the lawful owners of the Acquired Assets; that the Acquired Assets are free from all liens and

encumbrances; and that Sellers have good title and the right to sell the Acquired Assets to the Buyer.

For the consideration aforesaid, Sellers, for themselves and their successors and assigns, have covenanted and by this Bill of Sale and Assignment do covenant with Buyers, their successors and assigns, to do, execute and deliver, or to cause to be done, executed and delivered, all such further acts, documents or instruments of conveyance, transfer or assignment as shall be necessary or appropriate to vest in or confirm to Buyers, their successors and assigns, the Acquired Assets hereby assigned, transferred and conveyed which Buyers, their successors and assigns, reasonably require.

Sellesr hereby grant to Luther S. Pate IV their respective powers of attorney to execute such documents as may be reasonably necessary to transfer the Acquire Assets under this Agreement.

**IN WITNESS WHEREOF**, Sellers have caused this Bill of Sale and Assignment to be signed by their respective officers thereunto duly authorized as of the date first written above.

**VESPA BEVERAGES, LLC:**

Vespa Holdings, Inc., sole member

By: _____
     Geffrey A. Yielding

Its:    President

**VESPA HOLDINGS, INC.**

By: _____
     Geffrey A. Yielding

Its:    President


**GEFFREY A. YIELDING**

_____

## EXHIBIT A

## FURNITURE, FIXTURES AND EQUIPMENT

1.      All-in-one printer/fax machine

# SCHEDULE "C"

## BILL OF SALE AND ASSIGNMENT

This **BILL OF SALE AND ASSIGNMENT** (the *"Assignment"*), is made as of LIARCH 18, 2010, from Vespa Holdings, Inc., an Arkansas corporation (*"VHI"*), Vespa Beverages, LLC, an Arkansas limited liability company (*"VBL"*) and Geffrey A. Yielding, (collectively, the *"Sellers"*), to PBEV, LLC, a Delaware limited liability Company (*"Buyer"*).

### WITNESSETH:

**WHEREAS,** VHI currently has a total of Eleven Thousand (11,000) shares of common stock issued and outstanding;

**WHEREAS,** Yielding is currently the owner of Ten Thousand (10,000) shares of common stock in VHI;

**WHEREAS,** VHI is the sole member and owner of a one hundred percent (100%) interest in VBL, which may sometimes operate under the asserted fictitious name of Vespa Beverages, Inc.;

**WHEREAS,** Seller has been engaged in the business (*"Business"*) of manufacturing and distributing liquid beverages, specifically including, but not limited to, the manufacture and distribution of the Killer Buzz energy drink;

**WHEREAS,** Company has agreed to purchase and Seller has agreed to sell, substantially all of the assets used in the Business (the *"Assets"*) pursuant to an Asset Purchase Agreement executed of even date herewith (the *"Asset Purchase Agreement"*);

**WHEREAS,** it is the purpose of Seller hereunder to sell and transfer the property described in the Agreement to the Buyers; and

**WHERAS,** unless the context clearly indicates otherwise, capitalized terms used herein and in Exhibit A shall have the meanings set forth in the Agreement.

**THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers do hereby grant, bargain, sell, assign, convey, transfer and deliver to Buyers all right, title and interest to the following assets described on Exhibit "A" hereto (*"Acquired Assets"*).

**TO HAVE AND TO HOLD** the same unto Buyer and its successors and assigns, for its own use, benefit and behalf forever.

Sellers covenant to and with Buyer and its successors and assigns that they are the lawful owners of the Acquired Assets; that the Acquired Assets are free from all liens and encumbrances; and that Sellers have good title and the right to sell the Acquired Assets to the Buyer.

For the consideration aforesaid, Sellers, for themselves and their successors and assigns, have covenanted and by this Bill of Sale and Assignment do covenant with Buyers, their successors and assigns, to do, execute and deliver, or to cause to be done, executed and delivered, all such further acts, documents or instruments of conveyance, transfer or assignment as shall be necessary or appropriate to vest in or confirm to Buyers, their successors and assigns, the Acquired Assets hereby assigned, transferred and conveyed which Buyers, their successors and assigns, reasonably require.

Sellers hereby grant to Luther S. Pate IV their respective powers of attorney to execute such documents as may be reasonably necessary to transfer the Acquired Assets under this Agreement.

**IN WITNESS WHEREOF**, Sellers have caused this Bill of Sale and Assignment to be signed by their respective officers thereunto duly authorized as of the date first written above.

**VESPA BEVERAGES, LLC:**

Vespa Holdings, Inc., sole member

By: _____
    Geffrey A. Yielding
Its: President

**VESPA HOLDINGS, INC.**

By: _____
    Geffrey A. Yielding
Its: President

**GEFFREY A. YIELDING**

_____

## EXHIBIT A

## VEHICLES

| MAKE & MODEL | VIN NUMBER | LIEN HOLDER |
|---|---|---|
| 2007 Dodge Nitro | VIN#1D8GT28K47W64087 | Business Vehicle Finance |
| 2007 Dodge Nitro | VIN#1D8GT28K87W649089 | Business Vehicle Finance |
| 2008 Ford Escape | VIN#1FMC03188KE12295 | Ford Credit |
| 2008 Ford E150 | VIN#1FTNE14W18DS36411 | Ford Credit |
| 2007 Hummer | VIN#5GRGN23U17H113105 | GMAC |
| 2008 Ford F450 | VIN#1FTXW43R38EB20484 | Ford Credit |

## SCHEDULE "D"

## LIABILITIES, LIEN, MORTGAGES, SECURITY, INTEREST

1.   The indebtedness owed upon the vehicles identified in Schedule "C".

2.   The indebtedness specified in Article 1.4 of this Agreement.

## NON-COMPETITION AND CONFIDENTIALITY AGREEMENT

THIS NON-COMPETITION AND CONFIDENTIALITY AGREEMENT (the *"Agreement"*) is effective as of March **18**, 2010, by and among **Vespa Holdings, Inc.**, an Arkansas corporation (*"VHI"*), **Vespa Beverages, LLC**, an Arkansas limited liability company (*"VBL"*), **Geffrey A. Yielding** (*"Yielding"*) and **PBEV, LLC**, a Delaware limited liability company (the *"Company"*).

## WITNESSETH:

**WHEREAS**, VHI currently has a total of Eleven Thousand (11,000) shares of common stock issued and outstanding;

**WHEREAS**, Yielding is currently the owner of Ten Thousand (10,000) shares of common stock in VHI;

**WHEREAS**, VHI is the sole member and owner of a one hundred percent (100%) interest in VBL, which may sometimes operate under the asserted fictitious name of Vespa Beverages, Inc.;

**WHEREAS**, Yielding, through VHI and VBL (Yielding, VHI and VBL herein collectively referred to as *"Seller"*), has been engaged in the business (*"Business"*) of manufacturing and distributing liquid beverages, specifically including, but not limited to, the manufacture and distribution of the Killer Buzz energy drink;

**WHEREAS**, Company has agreed to purchase and Seller has agreed to sell, substantially all of the assets used in the Business (the *"Assets"*) pursuant to an Asset Purchase Agreement executed of even date herewith (the *"Asset Purchase Agreement"*);

**WHEREAS**, unless restricted, Seller could compete with, or disclose proprietary information about, the Business upon the sale of the Assets pursuant to the Asset Purchase Agreement; and

**WHEREAS**, competition by Seller with Company or the use or disclosure by Seller of confidential and proprietary information about the Business will result in damage to Company and its business, properties, assets, and goodwill.

**WHEREAS**, as consideration for Company entering into the Asset Purchase Agreement, Company desires to impose certain restrictions on Seller's ability to compete with, or disclose certain confidential information about, the Business upon the sale of the Assets pursuant to the Asset Purchase Agreement.

**NOW, THEREFORE**, in consideration of the above, the respective mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Company hereby agree as follows:

1.  **Definitions**.    The following terms shall have the definitions set forth below:

(a)    "Agreement" shall mean this Non-Competition and Confidentiality Agreement.

(b)    "Area" shall mean the Southeastern States and Arizona.

(c)    "Asset Purchase Agreement" shall mean that Asset Purchase Agreement executed of even date herewith by and among Company, Seller and Luther S. Pate IV.

(d)    "Business" shall mean and include manufacturing and distributing liquid beverages.

(e)    "Competing Business" shall mean any business, person or entity which is engaged in a business substantially the same as the Business within the Area; and

(f)    "Confidential Information" shall mean and include, but shall not be limited to, all of the following materials and information (whether or not reduced to writing and whether or not patentable) pertaining to Assets and Business, to which Seller had access or developed, in whole or in part, as (i) a direct or indirect result of his or its operation of Business or through the use of any of Seller's Assets, or (ii) as a direct or indirect result of having been an officer, member or employee of Seller:

(i)    All items of information that could be classified as a trade secret pursuant to law;

(ii)    The names and addresses of the customers of Seller and the nature and amount of business done with such customers;

(iii)    The names and addresses of employees, suppliers and other business contacts of Seller;

(iv)    The particular names, methods and procedures utilized by Seller in the conduct and advertising of its Business;

(iv)    The discoveries, concepts and ideas, whether patentable or not, including without limitation, the nature and results of research and development activities, processes, techniques, "know-how," and specifications of Business;

(v)    Marketing techniques, purchasing information, price lists, pricing policies, quoting procedures, financial information, budgets, customer names and requirements, customer data and other materials or information relating to Seller or the Business;

(vi)    Any other materials or information related to the Business or activities of Seller which are not generally known to others engaged in similar business activities.

Company's failure to make and keep any of the foregoing confidential shall not affect its status as part of the Confidential Information under the terms of this Agreement.

**2.** **Non-Competition Restrictions.** Seller covenants that, for a period of five (5) years from and after the date of this Agreement, Seller shall observe the following separate and independent covenants:

(a) Seller shall not within the Area solicit or accept, directly or indirectly, on its or his own behalf or in the service or on behalf of others, become financially interested in a Competing Business, or render any services to any Competing Business as an owner, employee, consultant, partner, officer, director or in any other relationship whatsoever.

(b) Seller shall not, either directly or indirectly, on its or his own behalf or in the service or on behalf of others, solicit, divert, or appropriate, or attempt to solicit, divert, or appropriate, to any Competing Business, any customer, other person or entity whose account with Seller was sold or serviced by or under his direction or supervision while he or it was associated with the Business.

(c) Seller shall not, either directly or indirectly, on its or his own behalf or in the service or on behalf of others, solicit, divert, or hire away, or attempt to solicit, divert, or hire away, to any Competing Business, any person employed by Company, whether or not such employee is a full-time, part-time or a temporary employee of the Company and whether or not such employment is pursuant to written agreement and whether or not such employment is for a determined period or is at will.

(d) Seller acknowledges and agrees that all Confidential Information, and all physical embodiments thereof, are confidential to and shall be and remain the sole and exclusive property of Company as of the date of this Agreement. Seller acknowledges that it is Company's intention to maintain the confidentiality of this information notwithstanding employees of Company having access to the information for the purpose of performing their duties with Company. Seller acknowledges that it is not practical, and shall not be necessary, to mark such information as "**CONFIDENTIAL**," or to transfer it within Company by confidential envelope or communication, in order to preserve the confidential nature of the information. Seller agrees that he or it will not: (i) disclose or make available any Confidential Information to any person or entity, or (ii) make or cause to be made, or permit, either on his own behalf or in the service or on behalf of others, any use of such Confidential Information.

**3.** **Seller's Acknowledgments.** Seller acknowledges that:

(a) Seller has become familiar with the Confidential Information;

(b) The Business is nationwide in scope;

(c) The Business's products and services are marketed throughout the United States;

(d) The Seller and the Business competes with other businesses that are or could be located in any State;

(e)     Company has required that Seller make the covenants set forth in Sections 2 and 3 of this Agreement as a condition to the Company purchasing the Assets pursuant to the Asset Purchase Agreement;

(f)     The provisions of Sections 2 and 3 of this Agreement are reasonable and necessary to protect and preserve the Assets and Business; and

(g)     Should Seller breach any of the covenants set forth in Sections 2 and 3 of this Agreement, it would result in irreparable loss, harm and injury to Company.

4.     **Blue Pencil Provision**.     If any of the covenants contained in Section 2, or any part thereof, is held to be unenforceable because of the duration of such provision or the scope of the subject matter thereof or the area covered thereby, the parties agree that the court making such determination shall have the power to reduce the duration, scope, and/or area of such provision and, in its reduced form, said provision shall then be enforceable.

5.     **Non-Disparagement**. Seller specifically agrees that he nor it shall communicate, directly or indirectly, by any means, including, without limitation, orally or in writing, to any person or entity any remarks derogatory to or disparaging of Company, the Business, or their employees, agents, subsidiaries, officers, operations, or manner of doing business.

6.     **Remedies**.     In addition to all other remedies provided at law or in equity, Company shall be entitled to both preliminary and permanent injunctions against Seller to prevent a breach or contemplated or threatened breach by Seller of any of the foregoing covenants, without the necessity of proving actual damages; and the existence of any claim, demand, cause of action, or action of Seller against Company, whether predicated upon this Agreement or otherwise, shall not constitute a defense to the enforcement by Company of any such covenants. In the event of an actual breach of any of the foregoing covenants, Company shall have the right to (a) recover damages for all losses, actual, contingent and consequential, including, but not limited to, future lost profits, (b) require Seller to account for and pay over to Company all profits or other benefits (collectively, **"Benefits"**) derived or received by Seller as a result of any transactions constituting such breach, and Seller hereby agrees to account for and pay over such Benefits to Company. Each of the rights and remedies enumerated above shall be independent of the other, and shall be severally enforceable. All of such rights and remedies shall be in addition to, and not in lieu of, any other rights and remedies available to Company at law or equity.

7.     **Severability**. Each of the covenants contained in this Agreement shall be deemed separate, severable, and independent covenants, and in the event any covenant shall be declared invalid by any court of competent jurisdiction, such invalidity shall not in any manner affect or impair the validity or enforceability of any other part or provision of such covenant or of any other covenant contained herein.

8.     **Waiver**. The rights and remedies of the parties to this Agreement are cumulative and not alternative. Neither the failure nor any delay by any party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or

further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege. To the maximum extent permitted by applicable law, (a) no claim or right arising out of this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other party; (b) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement.

**9.    Authorization.** Company is authorized to enter into this Agreement by virtue of a Consent Memorandum executed by the sole member of Company and effective as of even date herewith.

**10.    Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas.

**11.    Counterparts.** This Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered, shall be an original, but all of which shall together constitute one and the same agreement.

**12.    Successors and Assigns.** This Agreement will be binding upon Seller and Company and will inure to the benefit of Company and its affiliates, successors and assigns and Seller and Seller's assigns, heirs and legal representatives. As used herein, the words "successors and assigns" shall also be deemed to mean the heirs, executors, representatives and administrators of any natural person who is a party to this Agreement.

**13.    Section Headings, Construction.** The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement unless otherwise specified. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

**14.    Notices.** All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by facsimile (with written confirmation of receipt), provided that a copy is mailed by registered mail, restricted delivery, return receipt requested, or (c) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and facsimile numbers set forth below (or to such other addresses and facsimile numbers as a party may designate by notice to the other parties):

Yielding, VHI:    _____
&VHL             _____
                 _____
                 _____

| Company: | PBEV, LLC |
| | c/o W. Cameron Parsons |
| | The Parsons Firm, P.C. |
| | 2201 Jack Warner Parkway, Suite 2 |
| | Tuscaloosa, AL 35401 |

with a copy to:    Williams & Anderson PLC
111 Center Street, 22nd Floor
Little Rock, AR 72201
Attention: Jess Askew III
Facsimile No.: 501-372-6453

**15.    Incorporation of Recitals.** All recitals set forth in this Agreement are contractual and are not merely recitals of fact.

**16.    Waiver of Jury Trial.** **Seller and Company fully, voluntarily, knowingly, irrevocably and unconditionally waive any right to a trial by jury or to have a jury participate in any dispute, action or proceeding to enforce or defend any rights (whether based on contract, tort or otherwise) under this Agreement or under any amendment, instrument, document or agreement delivered (or which may in the future be delivered) in connection herewith. Seller agrees that any such action or proceeding shall be tried before a court and not before a jury.** This provision is a material inducement to the Company for its offer to purchase the Assets.

**17.    Breach.** The parties agree that in the event of an action to enforce this Agreement the prevailing or substantially prevailing party is entitled to recover its reasonable attorney fees and costs from the non-prevailing party.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed as of the date first above written.

<u>**COMPANY:**</u>

**PBEV LLC**

By: _____
     Luther S. Pate IV
Its:    Authorized Member

6

**SELLER:**

**VESPA BEVERAGES, LLC**

**By:  Vespa Holdings, Inc.**
**Its:  Sole Member**


By: _____
         Geffrey A. Yielding
Its:     President


**VESPA HOLDINGS, INC.**


By: _____
         Geffrey A. Yieldings
Its:     President


_____
Geffrey A. Yielding, Individually

7

# ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                      )ss.
COUNTY OF PULASKI   )

     ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverages, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

                                                Notary Public

My commission expires:

_____02-06-2019_____

# ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                      )ss.
COUNTY OF PULASKI   )

     ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

                                                Notary Public

My commission expires:

_____02-06-2019_____

8

## ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                     )ss.
COUNTY OF PULASKI    )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of ___March___, 2010.

_____
Notary Public

My commission expires:

___02-06-2019___

## ACKNOWLEDGMENT

STATE OF _____    )
                        )ss.
COUNTY OF _____    )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Luther S. Pate, IV to me personally well known, who stated that he was the Authorized Member of **PBEV, LLC.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said company, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ___ day of _____, 2010.

_____
Notary Public

My commission expires:

_____

9

## ACKNOWLEDGMENT

**STATE OF ARKANSAS** )
                              )ss.
**COUNTY OF PULASKI** )

       ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ___ day of _____, 2010.

_____
               Notary Public

My commission expires:

_____

## ACKNOWLEDGMENT

**STATE OF** _____ )
                                    )ss.
**COUNTY OF** _____ )

       ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Luther S. Pate, IV to me personally well known, who stated that he was the Authorized Member of **PBEV, LLC.**, and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said company, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this _15th_ day of _March_, 2010.

_Sherry L Beck_
_____
               Notary Public

My commission expires:

My Commission Expires
October 20, 2010
_____

SHERRY L. BELL
NOTARY
PUBLIC
ALABAMA STATE AT LARGE

9

## MUTUAL RELEASE OF CLAIMS

This Mutual Release of Claims (hereinafter referred to as the *"Release"*) is entered into by and among Geffrey A. Yielding (*"Yielding"*), Vespa Holdings, Inc. (*"VHI"*), an Arkansas corporation, and Vespa Beverages, LLC (*"VBL"*), an Arkansas limited liability company, (Yielding, VHI and VBL herein collectively the *"Yielding Parties"*), PBEV, LLC (*"PBEV"*), and Luther S. Pate IV (*"Pate"*) (PBEV and Pate herein collectively referred to as the *"Pate Parties"*) on this ⟨8ᵀᴴ⟩ day of March, 2010. The Yielding Parties and Pate Parties are sometimes collectively referred to as the *"Parties."*

### WITNESSETH:

**WHEREAS,** the Yielding Parties and Pate Parties desire to fully and finally mutually compromise, settle and release any and all known and unknown potential claims currently existing between the Yielding Parties and Pate Parties.

NOW THEREFORE, in consideration of the mutual covenants, promises and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Yielding, VHI, and VBL, agreeing to be mutually bound by the terms and conditions herein, covenant and agree as follows:

**1.** **Incorporation of Recitals and Exhibits.** All recitals set forth in this Release and all exhibits attached to this Release are contractual and are not merely recitals of fact.

**2.** **Release of Claims by Yielding Parties.** The Yielding Parties and their parents, affiliates, divisions, subsidiaries and other related entities, and his and their respective officers, directors, employees, agents, successors, assigns, estate, and heirs hereby agree and acknowledge that by signing this Release and accepting good and valuable consideration provided for in this Release, to which the Yielding Parties are not otherwise entitled, and upon the Pate Parties satisfying all requirements laid out in this Release, the Yielding Parties knowingly, voluntarily, irrevocably and unconditionally release and forever discharge the Pate Parties and their parent, affiliates, divisions, subsidiaries and other related entities, and his and their respective officers, directors, employees, agents, successors, assigns, estate, and heirs, of any and all claims, complaints, charges, allegations, demands or causes of action of any kind whatsoever, whether in law or in equity, direct or indirect, known or unknown, in tort, contract, by statute or any other basis for relief, compensatory, punitive or other damages, expenses (including attorney's fees), reimbursements or costs of any kind (*"Claims"*) which the Yielding Parties ever had, now have, or hereafter can, shall or may have or assert against the Pate parties for any matter, cause or thing which may have occurred before the Effective Date this Release.

1

3. **Release of Claims by Pate Parties.** The Pate Parties and their parents, affiliates, divisions, subsidiaries and other related entities, and their respective officers, directors, employees, agents, successors, assigns, estate, and heirs hereby agree and acknowledge that by entering into this Release and accepting good and valuable consideration provided for in this Release, to which the Pate Parties are not otherwise entitled, and upon the Yielding Parties satisfying the requirements laid out in this Release, the Pate Parties knowingly, voluntarily, irrevocably and unconditionally release and forever discharge the Yielding Parties and their parent, affiliates, divisions, subsidiaries and other related entities, and his and their respective officers, directors, employees, agents, successors, assigns, estate, and heirs, of any and all claims, complaints, charges, allegations, demands or causes of action of any kind whatsoever, whether in law or in equity, direct or indirect, known or unknown, in tort, contract, by statute or any other basis for relief, compensatory, punitive or other damages, expenses (including attorney's fees), reimbursements or costs of any kind, which the Pate Parties now have, or hereafter can, shall or may have or assert against the Yielding Parties for any matter, cause or thing which may have occurred before the Effective Date of this Release.

4. **Covenant Not to Sue.** The Parties represent and warrant that as of the date and time they enter into this Release they have not filed a charge or complaint with any court or administrative agency, an arbitration or other legal action, and agree not to pursue any of the above released claims against any other Party (respectively).

5. **Release of Known and Unknown Claims.** The Parties understand that this Release includes a release of all known and unknown claims.

6. **Entire Release/Choice of Law/Enforceability and Severability.** This Release supersedes any and all other prior oral and/or written agreements, sets forth the entire agreement between the Yielding Parties and the Pate Parties, and shall be binding on and inure to the benefit of the Parties, their legal representatives, assigns, parents, subsidiaries, successors, estate, heirs and all who succeed to their rights. No variations or modifications hereof shall be deemed valid unless reduced to writing and signed by the parties hereto. This Release shall be deemed to have been made in the State of Arkansas, and the validity, interpretation and performance of this Release shall be governed by, and construed in accordance with, the internal law of the State of Arkansas, without giving effect to conflict of law principles.

The terms of this Release are severable, and if for any reason any part hereof shall be found to be unenforceable, the remaining terms and conditions shall be enforced in full. Notwithstanding the foregoing and without waiving any rights to appeal, the invalid or unenforceable provision shall, if possible, be replaced by a valid and enforceable provision that most closely approximates the intention of the Parties.

7. **No Assignment of Matters Released.** Neither Party may assign transfer, or alienate any of the rights or obligations set forth herein. The Parties each represent and warrant that no such assignment have been made and they have the right to give a

full and complete release of the claims and matters released in this Release.

**8.** **No Admission of Liability.** This Release is entered into to effect a mutually acceptable resolution of the disputes between the Parties. In so doing, none of the Parties, or, as applicable, their respective affiliates, or any of their respective directors, officers, employees, agents or representatives admits or acknowledges in any way, and expressly denies, that it, or any of them has done anything wrong or that it, or any of them has or could have any liability to anyone in connection with any of the matters released in this Release.

**9.** **Authorization.** Each Party hereby represents and warrants that it has full power and authority to execute and deliver this Release and to perform its obligations hereunder. This Release constitutes the valid and legally binding obligation of the Parties, enforceable in accordance with its terms and conditions.

**10.** **Consultation with Counsel/Voluntariness.** All Parties acknowledge and agree that they have consulted an attorney before signing this Release, have read and fully understand the terms of this Release, are entering into this Release knowingly and voluntarily and acknowledge that they have not relied upon any statement or representation, written or oral, not set forth in this Release and that this Release is the complete and only Release between the Parties relating to and/or arising out of any disputes with respect to the Parties.

**11.** **Counterparts.** This Release may be executed by the Parties in one or more counterparts, and may be executed on electronically transmitted copies, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. This Release shall be effective and fully enforceable on the date it is last executed by a Party (the "Effective Date").

**12.** **Further Assurances.** Each of the Parties shall execute and deliver such additional documents and shall cause such further and additional action to be taken which any of the Parties may reasonably require in order to effectuate the terms of this Release.

**IN WITNESS WHEREOF**, the Parties voluntarily and knowingly enter into this Release on the date and time set out below.

GEFFREY A. YIELDING                    VESPA HOLDINGS, INC.


Geffrey A. Yielding                    By: _____ President
                                       Geffrey A. Yielding
Dated: _____                 Its:    President
                                       Dated: _____

3

LUTHER S. PATE IV                    VESPA BEVERAGES, LLC


_____            By: _____
Luther S. Pate IV                         Geffrey A. Yielding
                                     Its:    President
Dated: _____            Dated: _____

                                     PBEV, LLC


                                     By: _____
                                              Luther S. Pate IV
                                     Its:    Authorize Member
                                     Dated: _____

LUTHER S. PATE IV

VESPA BEVERAGES, LLC

_____
Luther S. Pate IV

By: _____
Geffrey A. Yielding
Its: President
Dated: _____

Dated: _3-15-10_____

PBEV, LLC

By: _____
Luther S. Pate IV
Its: Authorize Member
Dated: _3-15-10_____

## RESOLUTION OF MEMBERS
## OF
## PBEV, LLC

The undersigned, being the sole member of PBEV, LLC (the *"Company"*), in lieu of a formal meeting of the members, does hereby consent to the adoption of the following resolution, which shall have the same force and effect as a unanimous vote at a meeting of the members duly called and held. This consent shall be filed with the minutes of the proceedings of the members of the Company.

**WHEREAS**, PBEV, LLC, a Delaware limited liability company (*"PBEV"*), desires to purchase substantially all of the assets (*"Assets"*) used in the manufacture and distribution of Killer Buzz energy drink (the *"Business"*) by the Company, Vespa Holdings, Inc. (*"VHI"*) and Geffrey A. Yielding (*"Yielding"*);

**WHEREAS**, pursuant to the terms of that Asset Purchase Agreement to be executed by and among PBEV, Company, VHI, Yielding and Luther S. Pate IV (the *"Asset Purchase Agreement"*), Company must provide a Resolution executed by its sole member approving the transaction contemplated by the Asset Purchase Agreement.

**NOW, THEREFORE**, be it

**RESOLVED** that the Company is authorized to enter into and execute the Asset Purchase Agreement for the purchase price and upon the terms therein as negotiated by Luther S. Pate IV, in his capacity as the Authorized Member for Company;

**FURTHER RESOLVED** that Luther S. Pate IV, in his capacity as the Authorized Member for Company, is hereby authorized to execute and deliver for and on behalf of the Company the Asset Purchase Agreement, Bringdown Certificate, Non-Compete and

Confidentiality Agreements, Releases, and any and all additional certificates, documents and other papers and to perform all other acts as they may deem necessary or desirable to implement and carry out the purposes and intent of the Asset Purchase Agreement and these resolutions.

WITNESS our consent as the members of the Company effective the _15th_ day of _March_, 2010.

MEMBERS:

_____
Luther S. Pate IV

## SCHEDULE "H"

## BRING DOWN CERTIFICATE

The undersigned, PBEV, LLC, by and through Luther S. Pate IV, the Authorized Member, hereby certifies that:

1.    In order to consummate the transaction contemplated by the Asset Purchase Agreement dated *March 15,* , 2010 (the "Agreement"), Luther S. Pate IV, as the Authorized Member of PBEV, LLC, has been duly authorized to execute and deliver on behalf of PBEV, LLC, the Agreement and other documents and instruments required pursuant to the Agreement; and

2.    The Representations and Warranties made by PBEV, LLC that are contained in the Agreement are correct in all material respects, as of this *15th* day of *March* , 2010.

PBEV, LLC:

By: _____
      Luther S. Pate IV, Authorized Member

## ACKNOWLEDGMENT

STATE OF *Alabama* )
                                    )ss.
COUNTY OF *Tuscaloosa* )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Luther S. Pate IV to me personally well known, who stated that he was the authorized member of **PBEV, LLC**, and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of PBEV, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this day of *March 15* , 2010.

_____
Notary Public

My commission expires:

My Commission Expires
October 20, 2010

## SCHEDULE "I"

## MUTUAL RELEASE OF CLAIMS

This Mutual Release of Claims (hereinafter referred to as the *"Release"*) is entered into by and among, Vespa Holdings, Inc. (*"VHI"*), an Arkansas corporation, and Vespa Beverages, LLC (*"VBL"*), an Arkansas limited liability company, (Yielding, VHI and VBL herein collectively the *"Vespa Parties"*), Bond Laboratories, Inc. (*"BLI"*), Scott Landow (*"Landow"*), Jason Adelman (*"Adelman"*) and Vista Bottling Inc. (*"VBI"*) (BLI, Landow, Adelman and VBI herein collectively referred to as the *"Bond Parties"*) on this _____ day of March, 2010. The Vespa Parties and Bond Parties are sometimes collectively referred to as the *"Parties."*

## WITNESSETH:

**WHEREAS**, the Vespa Parties and Bond Parties desire to fully and finally mutually compromise, settle and release any and all known and unknown potential claims currently existing between the Vespa Parties and Bond Parties.

**NOW, THEREFORE**, in consideration of the mutual covenants, promises and agreements hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, VHI, VBL, BLI, Landow, Adelman and VBI, agreeing to be mutually bound by the terms and conditions herein, covenant and agree as follows:

**1.** **Incorporation of Recitals and Exhibits**. All recitals set forth in this Release and all exhibits attached to this Release are contractual and are not merely recitals of fact.

**2.** **Release of Claims by Vespa Parties.** The Vespa Parties and their parents, affiliates, divisions, subsidiaries and other related entities, and their respective officers, directors, employees, agents, successors, assigns, estate, and heirs hereby agree and acknowledge that by signing this Release and accepting good and valuable consideration provided for in this Release, to which the Vespa Parties are not otherwise entitled, and upon the Bond Parties satisfying all requirements laid out in this Release, the Vespa Parties knowingly, voluntarily, irrevocably and unconditionally release and forever discharge the Bond Parties and their parent, affiliates, divisions, subsidiaries and other related entities, and his and their respective successors, assigns, estate, and heirs, of any and all claims, complaints, charges, allegations, demands or causes of action of any kind whatsoever, whether in law or in equity, direct or indirect, known or unknown, in tort, contract, by statute or any other basis for relief, compensatory, punitive or other damages, expenses (including attorney's fees), reimbursements or costs of any kind (*"Claims"*) which the Vespa Parties ever had, now have, or hereafter can, shall or may have or assert against the Bond parties for any matter, cause or thing which may have occurred before the Effective Date this Release.

3.   **Release of Claims by Bond Parties.**  The Bond Parties and their parents, affiliates, divisions, subsidiaries and other related entities, and their respective officers, directors, employees, agents, successors, assigns, estate, and heirs hereby agree and acknowledge that by entering into this Release and accepting good and valuable consideration provided for in this Release, to which the Bond Parties are not otherwise entitled, and upon the Vespa Parties satisfying the requirements laid out in this Release, the Bond Parties knowingly, voluntarily, irrevocably and unconditionally release and forever discharge the Vespa Parties and their parent, affiliates, divisions, subsidiaries and other related entities, and their respective successors, assigns, estate, and heirs, of any and all claims, complaints, charges, allegations, demands or causes of action of any kind whatsoever, whether in law or in equity, direct or indirect, known or unknown, in tort, contract, by statute or any other basis for relief, compensatory, punitive or other damages, expenses (including attorney's fees), reimbursements or costs of any kind, which the Bond Parties now have, or hereafter can, shall or may have or assert against the Vespa Parties for any matter, cause or thing which may have occurred before the Effective Date of this Release.

4.   **Covenant Not to Sue.**  The Parties represent and warrant that as of the date and time they enter into this Release they have not filed a charge or complaint with any court or administrative agency, an arbitration or other legal action, and agree not to pursue any of the above released claims against any other Party (respectively).

5.   **Release of Known and Unknown Claims.**  The Parties understand that this Release includes a release of all known and unknown claims.

6.   **Entire Release/Choice of Law/Enforceability and Severability.**  This Release supersedes any and all other prior oral and/or written agreements, sets forth the entire agreement between the Yielding Parties and the Bond Parties, and shall be binding on and inure to the benefit of the Parties, their legal representatives, assigns, parents, subsidiaries, successors, estate, heirs and all who succeed to their rights.  No variations or modifications hereof shall be deemed valid unless reduced to writing and signed by the parties hereto. This Release shall be deemed to have been made in the State of Arkansas, and the validity, interpretation and performance of this Release shall be governed by, and construed in accordance with, the internal law of the State of Arkansas, without giving effect to conflict of law principles.

The terms of this Release are severable, and if for any reason any part hereof shall be found to be unenforceable, the remaining terms and conditions shall be enforced in full.  Notwithstanding the foregoing and without waiving any rights to appeal, the invalid or unenforceable provision shall, if possible, be replaced by a valid and enforceable provision that most closely approximates the intention of the Parties.

7.   **No Assignment of Matters Released.**  Neither Party may assign transfer, or alienate any of the rights or obligations set forth herein.  The Parties each represent and warrant that no such assignment have been made and they have the right to give a full and complete release of the claims and matters released in this Release.

**8.    No Admission of Liability.**  This Release is entered into to effect a mutually acceptable resolution of the disputes between the Parties.  In so doing, none of the Parties, or, as applicable, their respective affiliates, or any of their respective directors, officers, employees, agents or representatives admits or acknowledges in any way, and expressly denies, that it, or any of them has done anything wrong or that it, or any of them has or could have any liability to anyone in connection with any of the matters released in this Release.

**9.    Authorization.**  Each Party hereby represents and warrants that it has full power and authority to execute and deliver this Release and to perform its obligations hereunder.  This Release constitutes the valid and legally binding obligation of the Parties, enforceable in accordance with its terms and conditions.

**10.    Consultation with Counsel/Voluntariness.**  All Parties acknowledge and agree that they have consulted an attorney before signing this Release, have read and fully understand the terms of this Release, are entering into this Release knowingly and voluntarily and acknowledge that they have not relied upon any statement or representation, written or oral, not set forth in this Release and that this Release is the complete and only Release between the Parties relating to and/or arising out of any disputes with respect to the Parties.

**11.    Counterparts.**  This Release may be executed by the Parties in one or more counterparts, and may be executed on electronically transmitted copies, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  This Release shall be effective and fully enforceable on the date it is last executed by a Party (the "Effective Date").

**12.    Further Assurances.**  Each of the Parties shall execute and deliver such additional documents and shall cause such further and additional action to be taken which any of the Parties may reasonably require in order to effectuate the terms of this Release.

**IN WITNESS WHEREOF,** the Parties voluntarily and knowingly enter into this Release on the date and time set out below.

**GEFFREY A. YIELDING**                    **VESPA HOLDINGS, INC.**


_____         By: _____
Geffrey A. Yielding                          Geffrey A. Yielding

                                         Its:    President

Dated: _____          Dated: _____

3

**SCOTT LANDOW**                      **VESPA BEVERAGES, LLC**

_____          By: _____
Scott Landow                             Geffrey A. Yielding
                                     Its:    President
Dated: _____          Dated: _____

**JASON ADELMAN**                    **VISTA BOTTLING, INC.**

_____          By: _____
Jason Adelman                        Its:    President/CEO

Dated: _____          Dated: _____


                                     **BOND LABORATORIES, INC.**


                                     By: _____
                                     Its:    President/CEO
                                     Dated: _____

4

## RESOLUTION OF SHAREHOLDERS
## OF
## VESPA HOLDINGS, INC.

The undersigned, being the sole shareholders of Vespa Holdings, Inc. (the *"Company"*), in lieu of a formal meeting of the shareholders, do hereby consent to the adoption of the following resolution, which shall have the same force and effect as a unanimous vote at a meeting of the shareholders duly called and held. This consent shall be filed with the minutes of the proceedings of the shareholders of Vespa Holdings, Inc.

**WHEREAS**, PBEV, LLC, a Delaware limited liability company (*"PBEV"*), desires to purchase substantially all of the assets (*"Assets"*) used in the manufacture and distribution of Killer Buzz energy drink (the *"Business"*) by the Company, Vespa Beverages, LLC (*"VBL"*) and Geffrey A. Yielding (*"Yielding"*);

**WHEREAS**, pursuant to the terms of that Asset Purchase Agreement to be executed by and among PBEV, Company, VBL, Yielding and Luther S. Pate IV (the *"Asset Purchase Agreement"*), Company must provide a Resolution executed by its shareholders approving the transaction contemplated by the Asset Purchase Agreement.

**NOW, THEREFORE**, be it

**RESOLVED** that the Company is authorized to enter into and execute the Asset Purchase Agreement for the purchase price and upon the terms therein as negotiated by Geffrey A. Yielding, in his capacity as President of the Company;

**FURTHER RESOLVED** that the President is hereby authorized to execute and deliver for and on behalf of the Company the Asset Purchase Agreement, Bringdown Certificate, Non-Compete and Confidentiality Agreement, Releases, and any and all additional certificates,

documents and other papers and to perform all other acts as they may deem necessary or desirable to implement and carry out the purposes and intent of the Asset Purchase Agreement and these resolutions.

WITNESS our consent as the sole shareholders of the Company effective the ___18TH___ day of ___MARCH___, 2010.

**SOLE SHAREHOLDERS:**

_____
Geffrey A. Bielding, shareholder

_____
Luther S. Pate IV, shareholder

documents and other papers and to perform all other acts as they may deem necessary or desirable to implement and carry out the purposes and intent of the Asset Purchase Agreement and these resolutions.

WITNESS our consent as the sole shareholders of the Company effective the _/ 5<u>th</u>_ day of ___March___, 2010.

**SOLE SHAREHOLDERS:**

_____
Geffrey A. Yielding, shareholder

_____
Luther S. Pate IV, shareholder

# SCHEDULE "K"

## BRING DOWN CERTIFICATE

The undersigned, Vespa Beverages, LLC, by and through Geffrey A. Yielding, the President of its sole member, Vespa Holdings, Inc., hereby certifies that:

1.    In order to consummate the transaction contemplated by the Asset Purchase Agreement dated _MARCH 18_, 2010 (the "Agreement"), Geffrey A. Yielding, as the President of Vespa Holdings, Inc., has been duly authorized to execute and deliver on behalf of Vespa Beverages, LLC, the Agreement and other documents and instruments required pursuant to the Agreement; and

2.    The Representations and Warranties made by Vespa Beverages, LLC. that are contained in the Agreement are correct in all material respects, as of this _18TH_ day of _MARCH_, 2010.

**VESPA BEVERAGES, LLC:**

By:    Vespa Holdings, Inc., Sole Member

By: _____
      Geffrey A. Yielding, President

## ACKNOWLEDGMENT

**STATE OF ARKANSAS**    )
                                          )ss.
**COUNTY OF PULASKI**    )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC**, and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverages, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18TH day of _March_, 2010.

_____
Notary Public

My commission expires:

_02 · 06 · 2019_

## SCHEDULE "L"

### BRING DOWN CERTIFICATE

The undersigned, Vespa Holdings, Inc., by and through its President Geffrey A. Yielding, hereby certifies that:

1. In order to consummate the transaction contemplated by the Asset Purchase Agreement dated MARCH 18 , 2010 (the "Agreement"), Geffrey A. Yielding, as the President of Vespa Holdings, Inc., has been duly authorized to execute and deliver on behalf of Vespa Holdings, Inc. the Agreement and other documents and instruments required pursuant to the Agreement; and

2. The Representations and Warranties made by Vespa Holdings, Inc. that are contained in the Agreement are correct in all material respects, as of this 18TH day of MARCH , 2010.

VESPA HOLDINGS, INC.:

By: _____
Geffrey A. Yielding
Its:    President

### ACKNOWLEDGMENT

STATE OF ARKANSAS   )
                    )ss.
COUNTY OF PULASKI   )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of March , 2010.

_____
Notary Public

My commission expires:

02 - 06 - 2019

SUMMER L PRUETT
PULASKI COUNTY
No. 12370208
EXP. 2-8-2019
NOTARY PUBLIC - ARKANSAS

## BILL OF SALE AND ASSIGNMENT
## OF
## FEDERAL TRADEMARK

THIS BILL OF SALE AND ASSIGNMENT OF FEDERAL TRADEMARK (the "Agreement") is effective as of ⎕⎕⎕⎕ ⎕⎕ , 2010, by and among **Vespa Holdings, Inc.**, an Arkansas corporation ("*VHI*"), **Vespa Beverages, LLC**, an Arkansas limited liability company ("*VBL*"), **Geffrey A. Yielding** ("*Yielding*") and **PBEV, LLC**, a Delaware limited liability company (the "*Assignee*"). Yielding, VHI and VBL are herein collectively referred to as "*Assignor*."

### WITNESSETH:

**WHEREAS**, Assignor has adopted, used, and is using a mark registered in the United States Patent and Trademark Office as the following ("the *Mark*"):

KILLER BUZZ                    Registration No. 3,151,417

**WHEREAS**, Assignee desires to acquire the Mark and its registration;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby agrees to GRANTS, BARGAINS, SELLS, TRANSFERS, CONVEYS, ASSIGNS AND SETS OVER TO Assignee all of Assignor's right, title, and interest in and to the Mark and its registration, together with the goodwill of the business symbolized by the Mark as follows:

1.  <u>Representations and Warranties</u>. Assignor represents and warrants to Assignee that it has good title to the Mark and the registration therefore, and that the Mark is free and clear of all liens and encumbrances and shall forever warrant and defend title thereto in Assignee.

2.  <u>Absolute and Present Assignment</u>. It is understood and agreed the assignment granted herein shall constitute an absolute and present assignment from Assignor to Assignee and not an assignment for security purposes only.

3.  <u>Indemnification</u>. Assignor agrees to indemnify, defend and hold Assignee harmless from and against any expense, loss, damage, claim, causes of action and demand (including, without limitation, reasonable attorney's fees and costs) arising out of or connected with Assignor's breach under this Assignment.

4.  <u>Successors and Assigns</u>. This Assignment and each and every covenant, agreement and provision hereof shall be binding upon Assignor and their successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. As used herein, the words "successors and assigns" shall also be deemed to mean the heirs,

executors, representatives and administrators of any natural person who is a party to this Assignment.

5.     <u>Governing Law</u>.  The rights and remedies provided to Assignee by this Assignment are intended to be governed by the laws of the State of Arkansas without regard to its choice of law principles.

6.     <u>Severability Clause</u>.  It is the intent of this Assignment to confer to Assignee the rights and benefits hereunder to the full extent allowable by law.  The unenforceability or invalidity of any provisions herein shall not render any other provision or provisions herein contained unenforceable or invalid.  Any provisions found to be unenforceable shall be severable from this Assignment.

7.     <u>Cumulative with Other Documents</u>.  This Assignment and the covenants, agreements, obligation and liabilities of Assignor hereunder are cumulative with and shall not be superseded by any instrument, agreement or other document executed by Assignor in favor of Assignee or otherwise.

8.     <u>Further Assurances</u>.  Assignor shall take all such steps and actions necessary to transfer the registration of the Mark to Assignee and to execute and deliver such additional documents and shall cause such further and additional action to be taken which Assignee may reasonably require in order to effectuate the terms of this Assignment.

9.     <u>Attorneys' Fees</u>.  In the event that Assignee is successful in any suit or proceeding brought or instituted to enforce any of the provisions of this Assignment, or on account of any damages sustained by Assignee by reason of a violation of the terms of this Assignment, Assignor hereby agrees to reimburse Assignee for all reasonable attorneys' fees incurred.

10.    <u>Survival of Assignment</u>.  Assignor hereby acknowledges that this Assignment is consideration for Assignee entering into the Asset Purchase Agreement with Assignor executed of even date herewith, and that Assignor's obligations in regard to this Assignment shall continue after the termination of Assignee's employment.

**IN WITNESS WHEREOF**, this instrument has been executed by the parties herein in a manner and form sufficient to bind them, as of the day and year first written above.

**VESPA BEVERAGES, LLC**

**By: Vespa Holdings, Inc.**
**Its: Sole Member**


By: _____
        Geffrey A. Yielding
Its:    President

2

**VESPA HOLDINGS, INC.**

By: _Allen A. Yielding President_
      Geffrey A. Yieldings
Its:    President

_Jeffrey A. Yielding by Shelly Hogan Cook_
Geffrey A. Yielding, Individually

## ACKNOWLEDGMENT

STATE OF ARKANSAS   )
                     )ss.
COUNTY OF PULASKI   )

     ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverages, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of ___March___, 2010.

_Summer L Pruitt_
Notary Public

My commission expires:

___02 - 06 - 2019___

3

# ACKNOWLEDGMENT

STATE OF ARKANSAS     )
                             )ss.
COUNTY OF PULASKI    )

      ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

                                 Notary Public

My commission expires:

_02-06-2019_

# ACKNOWLEDGMENT

STATE OF ARKANSAS     )
                             )ss.
COUNTY OF PULASKI    )

      ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

                                 Notary Public

My commission expires:

_02-06-2019_

4

## BILL OF SALE AND ASSIGNMENT
## OF
## GOODWILL AND ALL INTANGIBLE PROPERTY

THIS BILL OF SALE AND ASSIGNMENT OF GOODWILL AND ALL INTANGIBLE PROPERTY (the "**Agreement**") is effective as of ˍˍˍˍˍˍˍˍˍˍ, 2010, by and among **Vespa Holdings, Inc.**, an Arkansas corporation ("*VHI*"), **Vespa Beverages, LLC**, an Arkansas limited liability company ("*VBL*"), **Geffrey A. Yielding** ("*Yielding*") and **PBEV, LLC**, a Delaware limited liability company (the "*Assignee*"). Yielding, VHI and VBL are herein collectively referred to as "**Assignor**."

### WITNESSETH:

**WHEREAS**, Assignor is the owner of certain intangible property (the "*Intangible Property*"), including without limitation all such general intangibles (as defined in the Uniform Commercial Code) and Goodwill now owned by Assignor used in connection with the business ("*Business*") of the manufacture and distribution of the Killer Buzz energy drink, including, without limitation, all right, title and interest of Assignor in and to:

(a)     agreements, leases, licenses, permits and contracts in favor of any Assignor or to which any Seller is or may become a party regarding the Business;

(b)     goodwill;

(c)     all intellectual property, including patents, copyrights, trademarks, goodwill, and trade secrets; and

(d)     all confidential information relating to the business of any Assignor including by way of illustration and not limitation: the names and addresses of, and credit and other business information concerning, any Assignor's past, present or future customers; the prices which any of Assignor obtains for its services or at which it sells merchandise; estimating and cost procedures; profit margins; policies and procedures pertaining to the sale and design of inventory, equipment, components, devices and services furnished by any Assignor; information concerning distributors, contractors, models, advertisers and suppliers of Assignor; and information concerning the manner of operation, business plans, projections, and all other information of any kind or character, whether or not reduced to writing, with respect to the conduct by any Assignor of the Business not generally known by the public;

**WHEREAS**, Assignee desires to acquire the Intangible Property from the Assignors;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby agrees to GRANTS,

BARGAIN, SELLS, TRANSFERS, CONVEYS, ASSIGNS AND SETS OVER TO Assignee all of Assignor's right, title, and interest in and to the Intangible Property as follows:

1.    <u>Representations and Warranties</u>. Each Assignor represents and warrants to Assignee that such part of the Intangible Property that it is transferring to Assignee has good title, and that such Intangible Property is free and clear of all liens and encumbrances.

2.    <u>Absolute and Present Assignment</u>. It is understood and agreed the assignment granted herein shall constitute an absolute and present assignment from Assignor to Assignee and not an assignment for security purposes only.

3.    <u>Indemnification</u>. Assignor agrees to indemnify, defend and hold Assignee harmless from and against any expense, loss, damage, claim, causes of action and demand (including, without limitation, reasonable attorney's fees and costs) arising out of or connected with Assignor's breach under this Assignment.

4.    <u>Successors and Assigns</u>. This Assignment and each and every covenant, agreement and provision hereof shall be binding upon Assignor and their successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. As used herein, the words "successors and assigns" shall also be deemed to mean the heirs, executors, representatives and administrators of any natural person who is a party to this Assignment.

5.    <u>Governing Law</u>. The rights and remedies provided to Assignee by this Assignment are intended to be governed by the laws of the State of Arkansas without regard to its choice of law principles.

6.    <u>Severability Clause</u>. It is the intent of this Assignment to confer to Assignee the rights and benefits hereunder to the full extent allowable by law. The unenforceability or invalidity of any provisions herein shall not render any other provision or provisions herein contained unenforceable or invalid. Any provisions found to be unenforceable shall be severable from this Assignment.

7.    <u>Cumulative with Other Documents</u>. This Assignment and the covenants, agreements, obligation and liabilities of Assignor hereunder are cumulative with and shall not be superseded by any instrument, agreement or other document executed by Assignor in favor of Assignee or otherwise.

8.    <u>Further Assurances</u>. Assignor shall take all such steps and actions necessary to transfer the Intangible Property to Assignee and to execute and deliver such additional documents and shall cause such further and additional action to be taken which Assignee may reasonably require in order to effectuate the terms of this Assignment.

9.    <u>Attorneys' Fees</u>. In the event that Assignee is successful in any suit or proceeding brought or instituted to enforce any of the provisions of this Assignment, or

on account of any damages sustained by Assignee by reason of a violation of the terms of this Assignment, Assignor hereby agrees to reimburse Assignee for all reasonable attorneys' fees incurred.

10. _Survival of Assignment._ Assignor hereby acknowledges that this Assignment is consideration for Assignee entering into the Asset Purchase Agreement with Assignor executed of even date herewith, and that Assignor's obligations in regard to this Assignment shall continue after the termination of Assignee's employment.

**IN WITNESS WHEREOF**, this instrument has been executed by the parties herein in a manner and form sufficient to bind them, as of the day and year first written above.

**VESPA BEVERAGES, LLC**

**By:** Vespa Holdings, Inc.
**Its:** Sole Member

By: _____
     Geffrey A. Yielding
Its:    President

**VESPA HOLDINGS, INC.**

By: _____
     Geffrey A. Yieldings
Its:    President

_____
Geffrey A. Yielding, Individually

## ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                              )ss.
COUNTY OF PULASKI    )

      ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverages, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of ____March____, 2010.

                                          Notary Public

My commission expires:

____D2-06-2019____

## ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                              )ss.
COUNTY OF PULASKI    )

      ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of ____March____, 2010.

                                          Notary Public

My commission expires:

____02-06-2019____

# ACKNOWLEDGMENT

STATE OF ARKANSAS   )
                             )ss.

COUNTY OF PULASKI   )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

_____
Notary Public

My commission expires:

_02 - 06 - 2019_

5

# SCHEDULE "O"

## BILL OF SALE AND ASSIGNMENT OF TRADE SECRETS

THIS BILL OF SALE AND ASSIGNMENT OF TRADE SECRETS (the "**Agreement**") is effective as of _____, 2010, by and among **Vespa Holdings, Inc.**, an Arkansas corporation ("*VHI*"), **Vespa Beverages, LLC**, an Arkansas limited liability company ("*VBL*"), **Geffrey A. Yielding** ("Yielding") and **PBEV, LLC**, a Delaware limited liability company (the "*Assignee*"). Yielding, VHI and VBL are herein collectively referred to as "*Assignor.*"

## WITNESSETH:

WHEREAS, Assignor is the owner of the _____ product (the "_____") and _____ (the "*Formula*") therefor, the _____ and Instructions being collectively referred to herein as the "*Trade Secrets*";

WHEREAS, Assignee desires to acquire all rights in the Trade Secrets;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby agrees to GRANT, BARGAINS, SELLS, TRANSFERS, CONVEYS, ASSIGNS AND SETS OVER TO Assignee all of Assignor's right, title, and interest in and to the Trade Secrets as follows and does hereby disclose the same in the manner set forth on the Exhibits attached hereto as Exhibits A & B and incorporated by this reference.

1.  <u>Representation and Warranties</u>. Assignor represents and warrants to Assignee that it has good title to the Trade Secrets, and that the Trade Secrets are free and clear of all liens and encumbrances whatsoever and that Assignor will forever warrant and defend title to the Trade Secrets.

2.  <u>Absolute and Present Assignment</u>. It is understood and agreed the assignment granted herein shall constitute an absolute and present assignment from Assignor to Assignee and not an assignment for security purposes only.

3.  <u>Indemnification</u>. Assignor agrees to indemnify, defend and hold Assignee harmless from and against any expense, loss, damage, claim, causes of action and demand (including, without limitation, reasonable attorney's fees and costs) arising out of or connected with Assignor's breach under this Assignment.

4.  <u>Successors and Assigns</u>. This Assignment and each and every covenant, agreement and provision hereof shall be binding upon Assignor and their successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. As used herein, the words "successors and assigns" shall also be deemed to mean the heirs, executors, representatives and administrators of any natural person who is a party to this Assignment.

1

5. <u>Governing Law</u>. The rights and remedies provided to Assignee by this Assignment are intended to be governed by the laws of the State of Arkansas without regard to its choice of law principles.

6. <u>Severability Clause</u>. It is the intent of this Assignment to confer to Assignee the rights and benefits hereunder to the full extent allowable by law. The unenforceability or invalidity of any provisions herein shall not render any other provision or provisions herein contained unenforceable or invalid. Any provisions found to be unenforceable shall be severable from this Assignment.

7. <u>Cumulative with Other Documents</u>. This Assignment and the covenants, agreements, obligation and liabilities of Assignor hereunder are cumulative with and shall not be superseded by any instrument, agreement or other document executed by Assignor in favor of Assignee or otherwise.

8. <u>Further Assurances</u>. Assignor shall take all such steps and actions necessary to transfer the Trade Secrets to Assignee and to execute and deliver such additional documents and shall cause such further and additional action to be taken which Assignee may reasonably require in order to effectuate the terms of this Assignment.

9. <u>Attorneys' Fees</u>. In the event that Assignee is successful in any suit or proceeding brought or instituted to enforce any of the provisions of this Assignment, or on account of any damages sustained by Assignee by reason of a violation of the terms of this Assignment, Assignor hereby agrees to reimburse Assignee for all reasonable attorneys' fees incurred.

10. <u>Survival of Assignment</u>. Assignor hereby acknowledges that this Assignment is consideration for Assignee entering into the Asset Purchase Agreement with Assignor executed of even date herewith, and that Assignor's obligations in regard to this Assignment shall continue after the termination of Assignee's employment.

**IN WITNESS WHEREOF**, this instrument has been executed by the parties herein in a manner and form sufficient to bind them, as of the day and year first written above.

**VESPA BEVERAGES, LLC**

**By: Vespa Holdings, Inc.**
**Its: Sole Member**


By: _____
      Geffrey A. Yielding

Its:    President

2

**VESPA HOLDINGS, INC.**

By: _____
    Geffrey A. Yieldings
Its:    President


_____
Geffrey A. Yielding, Individually


## ACKNOWLEDGMENT

**STATE OF ARKANSAS**   )
                       )ss.
**COUNTY OF PULASKI**   )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverage, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

_____
Notary Public

My commission expires:

_____02-06-2019_____

## ACKNOWLEDGMENT

**STATE OF ARKANSAS** )
                              )ss.
**COUNTY OF PULASKI** )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

_____
Notary Public

My commission expires:

_____02-06-2019_____

## ACKNOWLEDGMENT

**STATE OF ARKANSAS** )
                              )ss.
**COUNTY OF PULASKI** )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____March_____, 2010.

_____
Notary Public

My commission expires:

_____02-06-2019_____

4

## BILL OF SALE
## AND
## TRANSFER OF DOMAIN NAMESS

THIS BILL OF SALE AND TRANSFER OF DOMAIN NAMESS (the "**Agreement**") is effective as of  MARCH  18  , 2010, by and among **Vespa Holdings, Inc.**, an Arkansas corporation ("*VHI*"), **Vespa Beverages, LLC**, an Arkansas limited liability company ("*VBL*"), **Geffrey A. Yielding** ("*Yielding*") and **PBEV, LLC**, a Delaware limited liability company (the "*PBEV*"). Yielding, VHI and VBL are herein collectively referred to as "*Transferor.*"

## WITNESSETH:

**WHEREAS**, Transferor is the owner of the www.killerbuzz.com and www.killerbuzz.net domain names (the "Domain Names") and a myspace page at www.myspace.com/killer1buzz (the "Myspace Page"), along with all web pages and intellectual property related thereto and the content thereof, including the copyright in and to such content (collectively with the Domain Names and the Myspace Page, the "*Sites*");

**WHEREAS**, PBEV desires to acquire all rights in the Sites;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Transferor hereby agrees to GRANT, BARGAINS, SELLS, TRANSFERS, CONVEYS, ASSIGNS AND SETS OVER TO PBEV all of Transferor's interest in and to the Sites, along with the goodwill associated therewith, as follows:

1.    Transfer of Domain Names.

    1.1    Pursuant to the provisions of this Agreement, the Transferor hereby agrees to transfer any and all ownership of the registered Domain Names to PBEV and PBEV agrees to accept the transfer of the registered ownership of the Domain Names.

    1.2    The Transferor shall promptly apply to ENOM, Inc. or other applicable registrar as necessary (hereinafter "Registrars") to transfer ownership and management of the Domain Names to PBEV under current procedures of the Registrars for modifying a domain record.  Specifically, the Transferor will instruct Registrars to change the billing Names, technical contact, and administrative contact for the Domain Names to the following:

Billing Names:

> PBEV, LLC
> c/o The Parsons Firm, P.C.
> 2201 Jack Warner Parkway, Suite 2
> Tuscaloosa, AL 35401
> wcp@parsonsfirm.net

Technical Contact:

> David Shaddix
> Pate Holdings I.T. Manager
> Mobile 205-910-7823
> Office 205-752-0677
> Email:DShaddix@PateHoldings.net

Administrative Contact:

> David Shaddix
> Pate Holdings I.T. Manager
> Mobile 205-910-7823
> Office 205-752-0677
> Email:DShaddix@PateHoldings.net

1.4     The Transferor will provide all the information necessary to accomplish the transfer of the Domain Names, including the Authorization Codes, Security IDs, and Transaction numbers, and fully cooperate with PBEV on all matters, including technical issues, to facilitate transfer of the Domain Names.

1.5     The Transferor will refrain from registering or owning any domain Names or assert ownership of Internet sites which contain any trademarks of PBEV, including the Killer Buzz trademark.

1.6     A current printout of a WHOIS query provided to PBEV by the Transferor will be sufficient evidence of the transfer of the Domain Names.

2.     Transfer of Myspace Page.

2.1     Pursuant to the provisions of this Agreement, the Transferor hereby agrees to transfer any and all ownership of the Myspace Page to PBEV and PBEV agrees to accept the transfer of the Myspace Page.

2.2     The Transferor shall promptly supply to PBEV's technical contact, as listed in paragraph 1.2 hereabove, the user names and password for the Transferor's myspace.com account and other information as necessary to

transfer ownership and management of the Myspace Page according to the current procedures of myspace.com for modifying account information.

3.     <u>Representation and Warranties</u>. Transferor represents and warrants to PBEV that it has good title to the Sites, and that the Sites are free and clear of all liens and encumbrances whatsoever and shall forever warrant and defend title to the Sites in PBEV.

4.     <u>Absolute and Present Transfer</u>. It is understood and agreed that the Transfer granted herein shall constitute an absolute and present Transfer from Transferor to PBEV and not an Transfer for security purposes only.

5.     <u>Indemnification</u>. Transferor agrees to indemnify, defend and hold PBEV harmless from and against any expense, loss, damage, claim, causes of action and demand (including, without limitation, reasonable attorney's fees and costs) arising out of or connected with Transferor's breach under this Transfer.

6.     <u>Successors and Assigns</u>. This Transfer and each and every covenant, agreement and provision hereof shall be binding upon Transferor and their successors and assigns, and shall inure to the benefit of PBEV and its successors and assigns. As used herein, the words "successors and assigns" shall also be deemed to mean the heirs, executors, representatives and administrators of any natural person who is a party to this Transfer.

7.     <u>Governing Law</u>. The rights and remedies provided to PBEV by this Transfer are intended to be governed by the laws of the State of Arkansas without regard to its choice of law principles.

8.     <u>Severability Clause</u>. It is the intent of this Transfer to confer to PBEV the rights and benefits hereunder to the full extent allowable by law. The unenforceability or invalidity of any provisions herein shall not render any other provision or provisions herein contained unenforceable or invalid. Any provisions found to be unenforceable shall be severable from this Transfer.

9.     <u>Cumulative with Other Documents</u>. This Transfer and the covenants, agreements, obligation and liabilities of Transferor hereunder are cumulative with and shall not be superseded by any instrument, agreement or other document executed by Transferor in favor of PBEV or otherwise.

10.     <u>Further Assurances</u>. Transferor shall take all such steps and actions necessary to transfer the registration of the Sites to PBEV and to execute and deliver such additional documents and shall cause such further and additional action to be taken which PBEV may reasonably require in order to effectuate the terms of this Transfer.

11.     <u>Attorneys' Fees</u>. In the event that PBEV is successful in any suit or proceeding brought or instituted to enforce any of the provisions of this Transfer, or on account of any damages sustained by PBEV by reason of a violation of the terms of this

Transfer, Transferor hereby agrees to reimburse PBEV for all reasonable attorneys' fees incurred.

12. <u>Survival of Transfer</u>. Transferor hereby acknowledges that this Transfer is consideration for PBEV entering into the Asset Purchase Agreement with Transferor executed of even date herewith, and that Transferor's obligations in regard to this Transfer shall continue after the termination of PBEV's employment.

**IN WITNESS WHEREOF**, this instrument has been executed by the parties herein in a manner and form sufficient to bind them, as of the day and year first written above.

VESPA BEVERAGES, LLC

By: Vespa Holdings, Inc.
Its: Sole Member

By: _____
Geffrey A. Yielding
Its: President

VESPA HOLDINGS, INC.

By: _____
Geffrey A. Yieldings
Its: President

_____
Geffrey A. Yielding, Individually

## ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                             )ss.
COUNTY OF PULASKI    )

       ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverages, LLC, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _____ March _____, 2010.

_____
Notary Public

My commission expires:

_02 - 06 - 2019_

# ACKNOWLEDGMENT

STATE OF ARKANSAS )
                        )ss.
COUNTY OF PULASKI )

       ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _March_, 2010.

_____
Notary Public

My commission expires:

_02-06-2019_

# ACKNOWLEDGMENT

STATE OF ARKANSAS )
                        )ss.
COUNTY OF PULASKI )

       ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named Geffrey A. Yielding to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

       IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of _March_, 2010.

_____
Notary Public

My commission expires:

_02-06-2019_

# SCHEDULE "Q"

## ASSINGMENT OF CONTRACTS

**KNOW ALL MEN BY THESE PRESENTS:**

THAT the undersigned, **Vespa Holdings, Inc.**, an Arkansas corporation , **Vespa Beverages, LLC**, an Arkansas limited liability company, and **Geffrey A. Yielding** , collectively, **ASSIGNOR**, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration in hand paid by **PBEV, LLC**, a Delaware limited liability company, **ASSIGNEE**, the receipt and sufficiency of which is hereby acknowledged, does hereby sell, assign, transfer, deliver and convey unto the Assignee and its successors and assigns, those agreements listed on Exhibit A which is made a part hereof and incorporated herein (the "**Assigned Contracts**").

IN WITNESS WHEREOF, Grantor has executed and delivered this instrument on and as of this 18TH day of MARCH_____, 2010.

**ASSIGNOR:**

**VESPA BEVERAGES, LLC**

**By:** Vespa Holdings, Inc.
**Its:** Sole Member

**By:** _____
Geffrey A. Yielding
**Its:** President

**VESPA HOLDINGS, INC.**

**By:** _____
Geffrey A. Yieldings
**Its:** President

_____
Geffrey A. Yielding, Individually

1

# ACKNOWLEDGMENT

**STATE OF ARKANSAS** )
                                   )ss.
**COUNTY OF PULASKI** )

     ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named **Geffrey A. Yielding** to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** which is the sole member of **Vespa Beverages, LLC,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of Vespa Beverages, LLC , and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 8th day of March , 2010.

                                                   _____
                                                   Notary Public

My commission expires:

    02-06-2019

# ACKNOWLEDGMENT

**STATE OF ARKANSAS** )
                                     )ss.
**COUNTY OF PULASKI** )

     ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named **Geffrey A. Yielding** to me personally well known, who stated that he was the President of **Vespa Holdings, Inc.,** and that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

     IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 8th day of March , 2010.

                                                     _____
                                                  Notary Public

My commission expires:
    02-06-2019

3

# ACKNOWLEDGMENT

STATE OF ARKANSAS    )
                                )ss.
COUNTY OF PULASKI    )

ON THIS DAY came before me, a Notary Public, duly commissioned, qualified and acting, within and for the County and State aforesaid, the within named **Geffrey A. Yielding** to me personally well known, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 18th day of ___March___, 2010.

_____ Notary Public

My commission expires:

___02-06-2019___

*[Notary seal: SUMMER L. PRUETT / PULASKI COUNTY / No. 12370208 / EXP. 2-6-2019 / NOTARY PUBLIC - ARKANSAS]*

4

# SPECIFIC POWER OF ATTORNEY

I, GEFFREY A. YIELDING, whose residence is Jacksonville Arkansas, hereby appoint SAMUEL A. PERRONI and SHELLY HOGAN KOEHLER, jointly and severally, whose residence are Little Rock, Arkansas, my true and lawful agents and attorneys in fact to act in my name and behalf to do any and all lawful things which I could do myself with respect to any and all property (real and personal, including interests therein) of every kind and character owned by me at this time and which may be owned by me while this power of attorney remains in effect, including (without limiting the generality hereof) the following rights:

a.    To sell, convey, mortgage and lease realty; to execute, acknowledge and deliver deeds, mortgages, leases, releases, satisfactions and any other instruments relating to realty which my attorney considers necessary or appropriate; to operate, manage, control and lease any and all realty owned by me and to collect, demand and receive the rents, issues, incomes and profits derived therefrom; and to exercise in all respects general control and supervision over any realty belonging to me;

b.    To demand, sue for, collect, receive and hold any and all monies, securities and personal property of any nature whatsoever belonging to me or in which I may have an interest, and to give good and valid receipts and discharges for such payments;

c.    To borrow money for me and to secure any loan to me with a mortgage on or security interest in any real or personal property owned by me if, in my attorneys' judgment, such action should be necessary or appropriate;

d.    To loan money for me upon such terms and conditions as my attorneys sees fit, and to otherwise make such investments and reinvestments of any of my properties as my attorneys deems to be for my best interests;

e.    To endorse checks and other instruments made payable to me;

f.    To carry bank accounts for me in my name in such bank or banks as my attorneys may deem appropriate; to make deposits of money belonging to me in such account or accounts and to disburse such funds on my attorneys' signatures in any amounts, for such purposes and at such times as my attorneys may deem appropriate (including payments and expenditures for the maintenance, upkeep, repair or any other purpose in connection with any real or personal property owned by me; and for any other purpose which my attorneys may deem necessary or appropriate for the proper administration of my affairs);

g.    To exercise general supervision and control over any securities and other personal property of any nature whatsoever belonging to me; to collect dividends, profits or accruals therefrom and thereon; to sell or exercise stock options; to vote my stock; and to take any and all action which I could take myself with respect to all securities now owned by me or which may be hereafter acquired by my attorney for me;

h.    To open accounts in my name or in my attorneys' name as my agents and attorneys

in fact;

      i.      To transfer or withdraw monies on deposit to my credit in any bank or other financial institution; and to close any accounts where money is on deposit to my credit;

      j.      To execute and deliver any instruments and to do any and all things which may be legally done and are necessary or appropriate to carry out the power and authority hereby granted and conferred.

I hereby grant unto my attorneys, jointly and severally, in fact full power and authority to perform any act whatsoever requisite, necessary or appropriate to be done (as determined in my attorney's sole and unrestricted judgment and discretion) with respect to any and all of my property as fully as I might or could do if personally present with full power of substitution and revocation. I hereby ratify and confirm all that my attorneys in fact may have heretofore done in my name and behalf and all that my attorneys may hereafter do pursuant to the power of attorney hereby granted.

This power of attorney shall remain in full force and effect until revoked by me by an instrument in writing duly signed, acknowledged and filed for record in the records of Pulaski County, Arkansas.

IN WITNESS WHEREOF, I have affixed my signature on this __1st__ day of February, 2010.

_____
Geffrey A. Yielding

## ACKNOWLEDGEMENT

State of Arkansas    )
                 ) ss
County of Pulaski    )

On this day before me, Notary Public, duly commissioned, qualified and acting within and for the County and State aforesaid, appeared in person Geffrey Yielding, to me well known, who stated that he had executed the aforesaid Power of Attorney.

Witness my hand and seal this __1st__ day of February, 2010.

_____
Notary Public

My commission expires: 02-06-2019

SUMMER L. PRUETT
PULASKI COUNTY
No. 12370208
EXP. 2-6-2019
NOTARY PUBLIC · ARKANSAS